## Janvrin *v.* Scammon and Small.

Section 3 of chapter 207 of the Revised Statutes, which provides that if any person shall throw down or leave open any bar, gate, or fence belonging to or enclosing any land holden in common, or belonging to any particular person, or shall aid therein, he shall for every such offence *forfeit and pay* treble damages to the person injured, and also a sum not exceeding $15, according to the aggravation of the offence, is a penal statute, and debt, and not trespass, is the proper form of action founded thereon.

The limitation of costs by the common pleas is ordinarily a matter of discretion, and when such discretion is exercised by that court, this court will not interfere.

A witness will not be compelled to answer a question, if his answer will expose him to be criminally prosecuted; and he is not bound to testify to any particular fact, if a full account of his knowledge of such fact would so expose him. If the fact to which he is interrogated forms but one link in the chain of testimony which is to convict him, he is protected.

Whether the answer of a witness will tend to criminate him, is a point which the court will determine under all the circumstances of the case, but without requiring him fully to explain how it would criminate him. Unless the court can see that he will not be criminated, the privilege will be recognized and protected.

Where a plaintiff, in an action of trespass *quare clausum*, proved that the defendant was near the place of trespass on the evening before the act was committed; that he attempted to prevent a witness, who was in company with him on that evening, from testifying in the case; that he had conversed about the trespass in a manner showing that he was familiar with it; and the plaintiff also offered to show that the defendant was hostile to him—*held*, that the evidence was competent to be submitted to the jury, and that a nonsuit, ordered by the court, under such circumstances, should be set aside.

Trespass *quare clausum*, originally commenced before a justice of the peace. The declaration alleged that the defendants broke and entered the close of the plaintiff, situated in Stratham, (without any other description of the premises,) and threw down his fence standing thereon.

The defendants pleaded, first, the general issue; second, as to breaking and entering the close and throwing down the plaintiff's fence, *actio non*, because the close was not, at the time of the alleged trespass, the close of the plaintiff, and tendered an issue, which was joined; and third, as to break-

ing and entering the close *actio non,* because the close in which, &c., is bounded, &c., which said close, at the time when, &c., was the close, soil and freehold of one John Scammon, and the defendants, by his command and as his servants, at the time when, &c., broke and entered the close and removed the fence standing thereon and encumbering the close, concluding with a verification.

Upon these pleas being filed, no further proceedings were had before the magistrate, and the cause was entered in the common pleas.

The plaintiff made affidavits on the back of the writ that the acts set forth in the declaration had been committed, and that he suspected and had reason to suspect that they were committed by the defendants, and moved that judgment be rendered against them, unless they should acquit themselves upon oath, to be administered by the court, but the motion was denied by the court.

The plaintiff then became nonsuit as to Small, and exbibited to the court the depositions of John Scammon, named in the plea, taken to be used on the trial of the action, in which Scammon testified that the fence near the line, between the plaintiff's close and the land of him, said Scammon, and claimed by the plaintiff to be on the line, was cut down and thrown on to the land of the plaintiff, and that he, Scammon, had not directly or indirectly authorized either of the defendants to remove the same, and moved the court that Small's bill of costs be limited to those recoverable before a justice of the peace ; but the court overruled the motion, and refused to limit the costs.

The cause being opened to the jury, between the plaintiff and defendant Scammon, the plaintiff introduced said Small as a witness, who was objected to by the defendant Scammon, but admitted by the court.

The counsel for the plaintiff then proposed to Small the five questions following successively, to each of which the witness replied that he declined to answer the question, un-

less ordered to do so by the court, on the ground that his answers would have a tendency to subject him to a criminal prosecution, to wit:

1.   State whether or not, in July, 1850, you saw any gap in the fence on the line between land of the plaintiff and land of John Scammon?

2.   State whether or not, in July, 1850, you saw the defendant, John J. Scammon, near the fence between land of the plaintiff and land of John Scammon?

3.   State whether or not you saw the defendant, on any evening in July, 1850, with an axe in his hand?

4.   State whether or not the defendant left the home of his father, John Scammon, on any evening in July, 1850?

5.   State whether or not you saw the defendant cut or throw down the fence standing between the plaintiff's land and land of said John Scammon, in the month of July, 1850?

The counsel for the plaintiff moved the court to require of the witness to explain how his answers to said questions might tend to subject him to a criminal prosecution, but the court declined so to require of the witness. The plaintiff's counsel also moved the court that the witness be required to answer the questions, but the court declined so to require.

The plaintiff then introduced the following evidence, to show that the fence was cut down by the defendant Scammon.

Ezra Blye testified that he labored for the plaintiff on his farm in 1850; that there were three or four rods of fence on the line between his land and John Scammon's thrown down that summer, some of the stakes were cut off, some broken off, and some pulled up; that the fence was lying on Janvrin's land, fifteen feet or more from the place where it stood; that it was in July; that the witness quit work in Janvrin's field, near the fence, about dark one night, and saw it then standing, and that the next morning, about sun-

rise, he saw it down; that the plaintiff and the witness were at work haying the day before the fence was found down, near it, and that the defendant Scammon, and Small were at work through the day in John Scammon's field, on the opposite side of the fence, and were at work raking or cocking up hay, at night, when the witness quit work.

William J. Bowley testified that he was at John Scammon's in 1850; that he then saw the defendant John J. Scammon, and asked him how he and Janvrin got along; that he replied about as usual, or after the old sort, or something to that effect; that the witness said something more, but don't remember what; that the witness then said, well, you have not made up to be good friends, have you? that the witness had forgotten just what he said in reply, but he spoke about lowering the fence or about the fence being lowered; that the witness and defendant Scammon were talking about Janvrin, the plaintiff; that the spoke about the fence being cut down or lowered, or something to that effect, but he could not say what it was; that something was said about Janvrin's being cross or hoggish.

Luther Bride testified that he worked for the plaintiff, on his farm, in July, 1850; that he saw the fence down, lying on Janvrin's land, about a rod from where it stood; that he saw it thus down one morning about sunrise; that he had worked with the witness, Blye, the day before, making hay in Janvrin's field; that they worked there that day, between sunset and dark, and the fence was then standing; that the defendant Scammon, and Small were at work making hay for John Scammon on that day, on the opposite side of the fence, and were at work when the witness and Blye quit the field at night; that they were at work about thirty rods from the fence; that the defendant Scammon, lived about forty or fifty rods from the fence, and that Dr. Bartlett lived about thirty rods from the plaintiff's house, and Mr. Chase about the same distance, in another direction, and other neighbors about half a mile distant.

Ezra S. Durgin testified that he summoned Small to attend as a witness for the plaintiff, a few days before the cause came on for trial; that Small came to Exeter in company with the witness; that on their arrival at Exeter, Small and the defendant met, and Small told the defendant that the plaintiff had summoned him as a witness; that they went, in company with the witness, into the office of the plaintiff's attorney; that when there the defendant told Small not to open his head; that the plaintiff's attorney requested Small to step into another room with him; that the defendant followed them into the other room, and there whispered to Small, but the witness did not hear what he said.

The plaintiff then offered to prove that at the time of the alleged trespass, the defendant, Scammon, had hostile and unfriendly feelings towards the plaintiff, to which the defendant objected, and it was ruled out by the court.

No other evidence was offered by the plaintiff tending to prove that the defendant Scammon committed the trespass alleged, and the defendant moved that a nonsuit be entered, which motion was granted by the court, and the plaintiff excepted. The plaintiff then moved that the nonsuit be set aside, and the questions arising upon that motion, and the several rulings of the court in the progress of the trial, were transferred to this court for determination.

*Wood*, for the plaintiff.

This action was founded on section 3 of chapter 207 of the Revised Statutes, and trespass was the proper form. Such was the decision in *Morrison* v. *Bedell*, 2 Foster's Rep. 240; and the distinction there set forth is the true one.

The amount should be certain, to support debt. 1 Chit. Pld. 109, 113; 1 Arch. Nisi Prius 351; Oliver's Precedents 501; *Howe* v. *Semple*, 3 McLean 150; *Pollard* v. *Yerder*,

1 Marshall 264; *Bullard v. Bell*, 1 Mason 243; 2 Bacon's Abr. Debt.

Small's costs should have been limited. Such has been the course of the decisions in this court, as we understand them.

The ruling in regard to the questions put to Small was wrong. The court should have been able to see how the answers would criminate the witness. 4 Wendell 229; Thatcher's Crim. Cases 146; *United States* v. *Bruce*, 1 Robertson 210.

Small should have been compelled to answer the questions. *Southan* v. *Rerford*, 6 Cow. 254; *Dandridge* v. *Corder*, 14 Com. Law Rep. 188; *Rex* v. *Stanley*, 24 Com. Law Rep. 285; *Amherst* v. *Hollis*, 9 N. H. Rep. 107.

The testimony was sufficient to have gone to the jury to show the trespass, and was stronger than in the case of *Moulton* v. *Powers*, 32 Maine Rep. 375.

It was competent for the plaintiff to show the hostile feelings of the defendant. 1 Stark. on Ev. 51, 499, 502; 3 Bibb's (Kent.) Rep. 230.

*Marston*, for the defendants.

We contend, I. That the declaration was not founded upon the statute, and there is no law requiring the defendants to have acquitted themselves on oath of the acts charged in the declaration.

II. The court below had no power to limit the costs of Small, except the general power which they have over costs in all cases. The power is discretionary, and with the exercise of it this court will not interfere.

III. The court properly refused to require the witness, Small, to answer the interrogatories proposed, or to explain how his answers might tend to criminate him. A witness is not bound to disclose any fact which, of itself, would criminate him, or which, with other facts, would constitute a chain of testimony which might convict him. A wit-

ness cannot disclose a part of his knowledge and suppress the rest. *State* v. *Kimball*, 4 N. H. Rep. 562; 1 Greenl. on Ev. § 451 and note 2; 1 Burr's Trial 244.

IV. There is nothing in the testimony reported tending to charge Scammon with the commission of the acts set forth in the declaration, more than to fix them upon any other person who might chance to be in the neighborhood at the time.

EASTMAN, J. By section 3 of chapter 207 of the Revised Statutes, it is provided that if any person shall throw down or leave open any bar, gate or fence belonging to or enclosing any land holden in common, or belonging to any particular person, or shall aid therein, he shall for every such offence *forfeit and pay* treble damages to the person injured, and also a sum not exceeding fifteen dollars, according to aggravation of the offence.

By the fifth section of the same chapter, it is provided that in any case which may arise under the preceding sections, the plaintiff may proceed as at common law, or the plaintiff, his agent or attorney, may make oath that certain acts, set forth in the declaration, have been committed, and that he suspects that the defendant committed such acts, and the court upon such and other evidence to be offered by the plaintiff, may award him damages and costs as aforesaid, unless the defendant shall acquit himself upon oath, to be administered by the court, in which case he shall recover of the plaintiff double costs.

Upon these sections the plaintiff contends that his action was founded, and that under their provisions he was entitled to put the defendants on oath, as provided in the fifth section.

But the plaintiff's declaration was not drawn upon the statute. It is in the ordinary common law form of trespass *quare clausum;* and there is nothing in it showing the action to be upon the statute. But even if it had been in-

tended as such, it would be bad, for debt and not trespass is the correct form of action to enforce the penalty given by statute for injuries of the kind complained of. This was settled in *Morrison* v. *Bedell*, 2 Foster's Rep. 234. As we said in that case, the recovery under the statute is strictly and solely for a forfeiture and penalty. In the terms of the section upon which the plaintiff might have founded his action, if the facts would warrant it, it is provided that the wrong doer shall for every such offence *forfeit and pay* the amount named. And this is not in the nature of damages for the injury done, but is a penalty for the wrongful act committed.

The distinction which is suggested in the argument, and which is supposed to be pointed out in *Morrison* v. *Bedell*, page 240, does not exist in the manner contended for. The only recovery which can be had upon the statute is by an action of debt, and the declaration should be a special one upon the statute, in order to bring the action within its operation and effect.

The distinction alluded to, in *Morrison* v. *Bedell*, by the learned judge who delivered the opinion in that case, is that which exists between a penal statute and one giving increased damages or costs to a plaintiff. In a suit upon a penal statute the action should be debt; it is to recover a forfeiture; while where the statute simply provides that the plaintiff shall recover double or treble damages or double costs, the form may be according to the nature of the injury. In the latter cases the statutes only affect the mode of entering up judgment after the real damages have been found by the jury. The provision giving plaintiffs, under such circumstances, increased damages or costs, is an authority and direction to the court as to the mode of entering up judgment after the damages, that is, after the actual single damages have been found and assessed by the jury; so that if the statute should provide for the recovery of double damages, the court would order the amount found by the jury

to be doubled in making up the judgment. And this the authorities cited in *Morrison* v. *Bedell* clearly show. *Clark* v. *Worthington*, 12 Pick. 571; *Worster* v. *Proprietors Canal Bridge*, 16 Pick. 549.

Because the statute fixes the forfeiture at treble the actual damages, that does not make it a statute for the recovery of increased damages, inasmuch as the treble damages are declared to be the *penalty and forfeiture*. And it is no objection to the maintaining of debt for the recovery of a forfeiture, as is contended by the plaintiff, that the amount may depend on the finding of the jury. *Warren* v. *Doolittle*, 5 Cowen 678; *Cross* v. *The United States*, 1 Gallison 26; Com. Dig. Pld. 2, S. 14; *Wyford* v. *Tuck*, 1 Bos. & Pul. 458.

The error into which the plaintiff has fallen appears to have arisen from the form which the forfeiture is made to take by the statute. The fact that it is fixed at treble the damages to the person injured, has apparently led him to construe the statute as one for increased damages merely, instead of a penal statute as it is.

Our views of the law being as expressed, the first question presented by the case is easily determined. The provision of the statute that, " in any case which may arise under the preceding sections," the plaintiff may proceed as at common law, or may make oath that the acts set forth in his declaration have been committed, and that he suspects the defendant committed them, and that the court shall award judgment unless the defendant shall acquit himself upon oath, applies to those actions and those only which are brought upon the statute, and where the declarations are specially drawn upon the statute. If the declaration is properly drawn, so as to show that it is founded upon the statute, the plaintiff has his election either to proceed and prove his case in the ordinary way, as at common law, or to make oath himself, and to put his antagonist to acquit himself upon oath. But this provision of the statute applies only

to cases arising under the statute itself, where a special declaration has been drawn upon it. The party cannot tender his own oath in this way, in a common action of trespass *quare clausum*, such as is the form of action here. The ruling of the court, therefore, in refusing the motion for judgment against the defendants, unless they should acquit themselves upon oath, was correct.

The next question presented by the case relates to the correctness of the ruling, by which the court refused to limit the costs of Small.

The limitation of these costs was, under the circumstances, a matter resting in the sound discretion of the court below. This is nothing in our statute or practice imperative in such cases, and it was proper for that court to say whether, upon the facts presented, the costs should be limited or not. Having exercised that discretion, this court will not interfere to change the order. We have repeatedly held that we do not interfere with the discretionary rulings of the common pleas, unless that court transfers the question of discretion for us to determine.

We think, too, that the ruling of the court was also correct in declining to require the witness to answer the questions put, after he had stated that his answers might subject him to a criminal prosecution. A witness cannot be compelled to answer a question, if his answer will expose him to be criminally prosecuted; and he is not bound to testify to any particular fact, if a full account of his knowledge of such fact would so expose him. If the fact to which he is interrogated forms but one link in the chain of testimony which is to convict him, he is protected.

Whether the answer may tend to criminate or expose the witness, is a point which the court will determine under all the circumstances of the case; but without requiring him fully to explain how he might be criminated by the answer, which the truth would oblige him to give; for if he were obliged to show how the effect would be produced, the pro-

tection which the rule is designed to afford would be destroyed. Such is the doctrine of the books. *People* v. *Mather*, 4 Wend. 229; *Marshall*, C. J. in 1 Burr's Trial 244; 1 Greenl. on Ev. § 451; *State* v. *K.* 4 N. H. Rep. 562; *State* v. *Foster*, 3 Foster's Rep. 348.

The privilege is personal to the witness, and when a question is put, he in the first place decides for himself whether the answer will criminate him, and whether he will avail himself of his privilege. The court, also, will frequently interfere and inform the witness of his privilege, when they see that the question may lead to an answer tending to criminate him. When he places himself upon his privilege he will be protected, unless the court can see from the circumstances of the case that he is in error, or that it is a mere pretext on the part of the witness to avoid answering, and that his answer cannot, from the nature of things, criminate him. It must be manifest, however, that in many cases it will be impossible for the court to anticipate what effect the answer may have, and wherever they cannot see that he will not be criminated, the privilege will be recognized and protected. *State* v. *Foster*, 3 Foster's Rep. 348, and authorities there cited.

Upon these principles, we think that the court decided correctly in denying the motion of the plaintiff. The counsel moved the court to *require* of the witness to *explain* how his answers to the questions might tend to subject him to a criminal prosecution, and also that the witness be *compelled* to answer the questions. It would have been clearly wrong to have granted the first part of the motion; and as to the latter part there is nothing reported in the case to show that the statement of the witness that the answers would criminate him, was incorrect. The court, at the trial, from the appearance of the witness and other circumstances, could better judge of the matter than this court, and we think the ruling was well enough and founded upon correct principles.

Janvrin *v.* Scammon.

But the nonsuit must be set aside.    The evidence, though slight, was still competent to be considered, and being competent, should have been submitted to the jury.

The plaintiff proved that the defendant was in such a situation that he could have committed the trespass.    He was near the place where the fence was thrown down, and was there on the evening before the act was committed. He proposed also to show that the defendant was hostile to him.    In what this hostility consisted does not appear; but if it was evidenced by threats of injury or the like, it would have been competent.    The plaintiff also showed that the defendant attempted to prevent Small, who was in company with him on the evening before the trespass, from testifying in the case.    And there was a conversation about lowering the fence.    These circumstances had a tendency to show the defendant guilty of the trespass.    Of their sufficiency we are not to judge, but the jury.    But they should, we think, have been submitted to the jury for their determination.

*Nonsuit set aside.*