Hillsborough
No. 86-384

THE STATE OF NEW HAMPSHIRE

v.

STEVEN RICHARDS

August 17, 1987

*Stephen E. Merrill*, attorney general (*Barbara R. Keshen*, assistant attorney general, on the brief, and *Robert B. Muh*, assistant attorney general, orally), for the State.

*Kinghorn, Maynard, Craighead & Dionne P.A.*, of Nashua (*Rodkey Craighead, Jr.*, on the brief and orally), for the defendant.

PER CURIAM. In this case, we reverse the defendant's conviction of dispensing a narcotic drug in violation of RSA 318-B:2. The trial court's failure to investigate the validity of the fifth amendment claim of privilege asserted by the defendant's sole witness violated the defendant's right to a fair trial under the New Hampshire Constitution.

On January 18, 1985, James Brackett, Stephen Doyle, and Robert Grondin entered an apartment at 281 Central Street in Manchester occupied by Donna Dearborn and the defendant, Steven Richards. At the time, Brackett was a Nashua police detective sergeant working as an undercover investigator of the unlawful trafficking of drugs in the Manchester-Nashua area. He was associated with Doyle, who was also a Nashua police detective sergeant working undercover. Grondin, who was known to the occupants of the apartment, was an informant who took the officers to the Dearborn apartment to purchase cocaine.

In due course, Richards was indicted for the offense of dispensing 0.49 grams of cocaine to Donna Dearborn:

> "[W]ithout being authorized to do so under New Hampshire Revised Statutes Annotated, Chapter 318-B, [Richards] did purposely dispense a narcotic drug as defined by said statute, to wit: cocaine, to Donna Dearborn at 281 Central Street, Manchester, New Hampshire"

The indictment was based upon the observations of the officers that, while all parties were in the kitchen of the apartment, Richards absented himself briefly and returned with two small packets which he placed on the kitchen table. The contents of the packets were later proven to be cocaine. Dearborn handed the packets to Sergeant Brackett and received $50 from him. Dearborn was indicted for the offense of selling a narcotic drug (the two packets in question) to James Brackett. She pleaded guilty to the indictment on March 10, 1986, and was sentenced on the same day. Richards pleaded not guilty to the indictment charging him with the offense, was tried by jury in the Superior Court (*Wyman*, J.) on July 9, 1986, was found guilty, and appealed his conviction.

The appeal is grounded upon three claims of trial court error, each of which was preserved for review and is set forth in the defendant's brief as follows:

"I. Whether the trial Court erred by sustaining the Fifth Amendment privilege of the individual to whom the defendant had allegedly dispensed cocaine where the Court did not investigate the validity of the claim of privilege in light of the specific questions to be asked, and further did not consider the possibility of granting use immunity to the witness."

"II. Whether the trial Court erred by refusing to admit into evidence the prior written statement of an unavailable witness, where the statement was at the time of its making against the penal interest of the defendant."

"III. Whether the trial Court erred by instructing the jury to refrain from exercising its nullification prerogative."

For the reasons which follow, we reverse the conviction.

Presumably in the expectation that Dearborn would provide exculpatory evidence on his behalf, the defendant called her as his sole witness at trial. She claimed constitutional protection from being compelled to give testimony that could incriminate her. She refused to state her name or give further evidence. The court dismissed the witness following a brief colloquy which provides the background for this aspect of the appeal and is, therefore, extensively quoted.

"DIRECT EXAMINATION: (By Mr. Craighead.)

Q. What is your name?

A. I refuse to give my name because I want to plead the 5th. I don't want to incriminate myself.

THE COURT: May I inquire whether you would give the same answer to any other question?

THE WITNESS: Yes.

THE COURT: You're excused.

. . .

MR. CRAIGHEAD: At this time I again invite the Court's attention to Part 1, Article 15 of the New Hampshire Constitution which gives the defendant the right to require all proofs favorable to him. I also invite the Court's attention to the 6th Amendment to the Constitution which in pertinent part gives a criminal defendant the right to due process for obtaining witnesses. I have earlier today represented that you need to make a determination of whether a witness' refusal to answer is justifiable under the privilege. I have to ask her specific questions and you have to see and determine from the circumstances whether or not there is a reasonable ground to apprehend danger.

. . .

THE COURT: Now let's get this understood. This Court has ruled and this Court for many, many years was in the Congress of the United States and has served as counsel to committees from 50 years ago that if a witness answers one question under the 5th amendment and waives it, they waive their privilege and must answer all questions. I'm not going to order this witness to answer a question or rule that she has waived her right not to incriminate herself. The State has indicated here that if this witness answers in a way that permits the State to prosecute her for an additional offense, it intends to do so. Your objection is overruled. That's all."

In so ruling, the trial court ran afoul of this court's holding in *State v. Bell*, 112 N.H. 444, 298 A.2d 753 (1972), where Chief Justice Kenison wrote the following language which provides the fulcrum upon which assertions of the privilege contained in the fifth amendment of the United States Constitution and in article 15 of part I of the New Hampshire Constitution are balanced:

> "It is often said that the privilege against self-incrimination guaranteed by the fifth amendment to the United States Constitution and article 15, part I of the New Hampshire constitution is an option for the witness to refuse to answer each particular question as it is propounded, and not a prohibition of all further inquiry by the examiner. The rationale underlying this rule rests upon the fact that the privilege is a limited one, protecting the witness from responding to questions only if the answers would in fact have a tendency to subject him to prosecution. The court must necessarily make the final determination of whether a truthful and complete response might be incriminating . . . and in most cases the court will be unable to give reasoned consideration to the privilege claim until the witness' refusal to answer a particular question is viewed in the light of all of the circumstances of the particular case."

112 N.H. at 447, 298 A.2d at 756. (Citations omitted.)

■■ This is a point which need not be labored further except to observe that Justice Kenison traced his analysis to both an early decision of this court, *Janvrin v. Scammon*, 29 N.H. 280 (1894), as well as a more recent decision of the United States Supreme Court, *Malloy v. Hogan*, 378 U.S. 1 (1964). The privilege against self-incrimination as set forth in the State and National Constitutions may not be applied by the court to create an all-inclusive immunization from giving testimony. Instead, it must be weighed against the defendant's right under part I, article 15 of the New Hampshire Constitution "'to produce all proofs that may be favorable to himself.'" *State v. Lavallee*, 119 N.H. 207, 210, 400 A.2d 480, 482 (1979). This balance is to be determined in accordance with the standards set forth in *Malloy v. Hogan, supra* at 11–12. *Id.*; *see also State v. Wheeler*, 128 N.H. 767, 770–71, 519 A.2d 289, 291 (1986). Because we find that the trial court erred in its application of the law governing the privilege against self-incrimination, this holding is dispositive of the case before us. However, we will note

in passing the two remaining issues raised by the defendant in the event they arise during a retrial of this indictment.

■ The defendant claims that the trial court's ruling which permitted the witness Dearborn not to give testimony placed her in the status of an unavailable witness under New Hampshire Rule of Evidence 804(a)(1) and that an affidavit she gave to defense counsel exculpating the defendant should have been admitted as an exception to the rule against hearsay because it constituted a declaration against penal interest under Rule 804(b)(3). On the record before us, it is apparent that the trial court could properly find, as it did, that the witness was unavailable. Dearborn's position was squarely within the language of Rule 804(a)(1), which provides:

"(a) *Definition of unavailability.* 'Unavailability as a witness' includes situations in which the declarant—

(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his or her statement[.]"

Rule 804(b)(3) provides that a statement against interest is not excluded by the hearsay rule if the declarant is, as in this case, unavailable as a witness:

"(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in this position would *not* have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

(Emphasis in the original.)

■ The key language for purposes of this case is the qualifying language providing that the statement sought to be introduced "is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." In *State v. Mallar*, 127 N.H. 816, 818, 508 A.2d 1070, 1071 (1986), we said that we will not disturb the trial court's decision to admit hearsay under an exception for declarations against penal interest unless it was clearly erroneous. The trial court in this case made the following finding on the record:

"The Court finds that the proferred [sic] affidavit executed in the office of defendant's counsel with defendant also in that office and offered to exculpate the defendant is not trustworthy, as that term appears in 804-B:3 [sic] from a witness who resided with the defendant and who had already been indicted for selling cocaine to her knowledge, and subsequently having pleaded guilty to such indictment. The admission of the affidavit is denied. The defendant's objection is noted."

■■ We cannot say that the trial court erred in reaching its judgment that the Dearborn affidavit was not trustworthy. Trustworthiness of statements made against penal interest is viewed in light of the criteria set forth in *Chambers v. Mississippi*, 410 U.S. 284 (1973). The factors considered by the *Chambers* court included spontaneity, closeness in time to the event, corroboration by some other evidence, and ultimately whether or not in a very real sense the statement is self-incriminatory. *Id.* at 300–01. In the case before us, although the trial court's reliance on the witness' subsequent guilty plea is misplaced, the declarant resided with the defendant, who was not related to her, and her affidavit was contrary to all other testimony. No evidence corroborated the affidavit.

The last issue raised by the defendant concerns the failure of the trial court to give his requested instruction relative to jury nullification:

"You are instructed that even if you find that the State has proven each and every element of the offense charged beyond a reasonable doubt, you may still find the defendant not guilty if you have a conscientious feeling that a not guilty result would be a fair result in this case."

The court in fact gave the following instruction on the matter of nullification:

"You take an oath when you take the jury duty to follow the law as the court gives it to you, but this jury and every jury has the power to return a verdict of not guilty if that be their unanimous, conscientious conviction. I think you all know that, too.

. . .

[I]f you find that the State has proven all of the elements of the offense charged beyond a reasonable doubt, you should find the defendant guilty."

In *State v. Cote*, 129 N.H. 358, 368, 530 A.2d 775, 780 (1987), we rejected the argument that the trial judge must instruct the jury that it has the power of nullification. In *Cote*, as in the present case, the trial judge instructed the jury that it should convict, not that it must, if the State meets its burden of proof. However, in this case, the judge also remarked on the jury's "power to return a verdict of not guilty if that be their unanimous, conscientious conviction." Thus the court took upon itself the task of telling the jury of its nullification power. Having undertaken this explanation, it was bound to explain the law correctly. Although the court's explanation is not so clear as it could be, and we would not urge it as a standard instruction, it does not so distort the law as to constitute reversible error.

*Reversed.*