Strafford
No. 98-163

THE STATE OF NEW HAMPSHIRE

v.

SEAN CROFT

April 17, 2000

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*Behzad Mirhashem*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, Sean Croft, was convicted of first degree assault, *see* RSA 631:1 (1996), and aggravated felonious sexual assault, *see* RSA 632-A:2 (1996). We affirmed his convictions in *State v. Croft*, 142 N.H. 76, 696 A.2d 1117 (1997) (*Croft I*). He appeals the Superior Court's (*Fauver*, J.) denial of his motion for new trial based on a claim of ineffective assistance of counsel under the State and Federal Constitutions. The defendant challenges only his conviction for aggravated felonious sexual assault, arguing that his trial counsel's performance in handling two prosecution witnesses who testified against him was constitutionally deficient. We affirm.

I

█ We recite the salient facts outlined in *Croft I*, 142 N.H. 76, 696 A.2d 1117, and otherwise presented in the record. On September 8, 1992, the defendant encountered the victim in a restaurant and gave her pills for a headache which he knew were prescription sedatives. Once she was unconscious, he brought her to his apartment where he brutally beat, stabbed, and raped her, and forced her to consume additional pills. The record suggests that two other men may also have been involved in the physical and sexual assaults.

After his arrest, the defendant confessed to police that he beat the victim but he denied raping her. At trial, the victim had virtually no memory of the physical and sexual assaults, recalling only that she was kicked in the throat and asked if she had "had enough." A small amount of seminal fluid was found in the victim's vagina, but the sample was not sufficient to allow a positive DNA identification. The only direct evidence identifying the defendant as the perpetrator of the sexual assault was the testimony of two witnesses, Shane Grant and Keith Stanley, who claimed he admitted committing the rape.

II

The State and Federal Constitutions guarantee a criminal defendant reasonably competent assistance of counsel. *State v. Matiyosus*, 134 N.H. 686, 687, 597 A.2d 1068, 1069 (1991). To successfully assert a claim for ineffective assistance of counsel, a defendant must show that counsel's representation was constitutionally deficient and actually prejudiced the outcome of the case. *State v. Seymour*, 140 N.H. 736, 748, 673 A.2d 786, 795, *cert. denied*, 519 U.S. 853 (1996). To establish an ineffective assistance claim, a defendant must overcome the "strong presumption that counsel's conduct [fell] within the limits of reasonable practice, bearing in mind the limitless variety of strategic and tactical decisions that counsel must make." *State v. Fecteau*, 140 N.H. 498, 500, 667 A.2d 1384, 1387 (1995) (quotation and brackets omitted). The standard for determining whether counsel's performance is constitutionally deficient is the same under both the State and Federal Constitutions. *See State v. Dewitt*, 143 N.H. 24, 29, 719 A.2d 570, 573 (1998). Therefore, we will examine the constitutional competency of trial counsel's performance under the State Constitution only, *see State v. Gonzalez*, 143 N.H. 693, 703, 738 A.2d 1247, 1256 (1999), and rely on federal case law only for guidance, *see State v. Drewry*, 141 N.H. 514, 515-16, 687 A.2d 991, 993 (1996).

To show actual prejudice, a defendant must establish with reasonable probability "that the result of the proceeding would have

been different had competent legal representation [been provided]." *State v. Henderson,* 141 N.H. 615, 618, 689 A.2d 1336, 1339 (1997). The prejudice inquiry considers "the totality of the evidence before the judge or jury." *Id.* at 618-19, 689 A.2d at 1339. The touchstone for prejudice under a federal constitutional analysis is "whether counsel's performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Gonzalez,* 143 N.H. at 704, 738 A.2d at 1257 (quotation omitted). We need not decide whether the federal standard for actual prejudice meaningfully differs from the standard under the State Constitution because we conclude that counsel's performance was adequate with respect to one witness, and that the defendant failed to establish actual prejudice under either constitutional standard with respect to the other witness. *See id.*

## III

The defendant first faults trial counsel for not calling Brian Ellis, an inmate, as a witness to contradict the testimony of another inmate, Shane Grant. Both Ellis and Grant were incarcerated with the defendant during his pretrial confinement. Grant testified that while incarcerated, the defendant admitted beating and raping the victim, and that Ellis was present when the admission was made. The defendant advised the court that he intended to call Ellis to impeach Grant, and that Ellis would testify that the defendant never made any admissions in his presence. In response, the State said it would counter Ellis' proposed testimony by offering the opinion of assistant county attorney Harry Starbranch that Grant had a truthful character and a reputation for honesty, and that Ellis was not a credible person. After a colloquy with counsel, the court said that Starbranch's proposed testimony on Grant's truthful character would probably be permitted pursuant to New Hampshire Rule of Evidence 608 if a proper foundation was presented. The defendant chose not to call Ellis as a witness and thus Starbranch never testified.

In his direct appeal in *Croft I,* the defendant challenged the court's preliminary "ruling" on Starbranch's proposed rebuttal testimony. *Croft I,* 142 N.H. at 78, 696 A.2d at 1120. In that appeal, we held that the Starbranch issue was not adequately preserved for appellate review because neither Ellis nor Starbranch testified and, accordingly, any claimed error was too speculative. *Id.* at 79, 696 A.2d at 1120. In his present appeal, the defendant asserts that his counsel's performance at trial was constitutionally deficient because

he failed to properly preserve the Starbranch issue by calling Ellis as a witness. He contends that had Ellis testified, the trial court likely would have permitted Starbranch to vouch for Grant's truthfulness, a clearly erroneous ruling which would have led to a reversal of his sexual assault conviction and a new trial. We disagree.

Defense counsel must engage in numerous tactical and strategic decisions during trial. When faced with the question of whether to call Ellis, the record reveals that trial counsel had to weigh a number of factors and risks. While Ellis apparently would have testified that the defendant never made the admission Grant described, possibly creating doubt as to whether the admission ever occurred, the trial court indicated that subject to a proper foundation, it might allow Starbranch to rebut Ellis by vouching for Grant's truthfulness. Though the defendant contends that permitting Starbranch to testify under Rule 608 would have been clearly erroneous requiring reversal on appeal and a new trial, our holding in *Croft I* belies his contention.

As part of our preservation analysis in *Croft I*, we reasoned that "we [had] no way of knowing . . . whether Ellis' testimony and [his] cross-examination . . . would have triggered rehabilitation evidence under Rule 608(a)(2), . . . [or] whether the prosecution would have established the foundational predicate for [Starbranch's] testimony . . . ." *Id.* Thus, defense counsel likewise could not have known whether Starbranch's testimony would have been allowed.

The record also reveals that the prosecution intended to impeach Ellis on cross-examination by raising an ongoing investigation involving his possible commission of insurance fraud. While it is unclear whether he would have asserted his Fifth Amendment right to remain silent, and what result a *Richards* hearing would have produced, *see State v. Richards*, 129 N.H. 669, 531 A.2d 338 (1987), counsel still had to weigh these risks against the apparent benefit to be secured from Ellis' testimony. Additionally, Ellis' deposition demonstrates that he may not have been able to directly impeach Grant's recollection of the defendant's admission. Ellis acknowledged that an individual can be present during a conversation occurring between other people and not hear it. Counsel's decision not to call Ellis as a witness presents a classic tactical choice which we will not question with the benefit of hindsight. Accordingly, trial counsel's failure to call Ellis as a witness did not fall below the performance standard guaranteed by the State Constitution.

## IV

The defendant further faults his trial counsel for failing to investigate the expected testimony of another witness, Keith Stanley, who testified that the defendant admitted to raping and beating the victim the day after the assaults. Trial counsel never interviewed Stanley and, in fact, canceled his scheduled deposition a week before trial. Stanley acknowledged on the witness stand that he was disclosing the defendant's admission for the first time. At the hearing on the defendant's motion for new trial, trial counsel admitted that he was surprised by Stanley's testimony.

The defendant argues that his counsel should have questioned Stanley prior to trial. He contends that had Stanley recounted the alleged admission of rape, his counsel then would have been prepared to counter such evidence with the rebuttal testimony of Thelma Croft, the defendant's sister-in-law. On the other hand, if Stanley failed to disclose the rape admission or provided a statement that was inconsistent with his ultimate trial testimony, defense counsel would have been able to effectively impeach him. We conclude that the defendant failed to establish any prejudice, and thus we do not reach whether counsel's handling of Stanley was constitutionally deficient.

We turn first to the defendant's claim that Croft's testimony would have "contradict[ed] the evidence that [he] went to . . . Stanley's house" the day after the assault and thus could not have made the admission Stanley claimed. The evidence presented at trial, however, reveals that Croft would not have contradicted evidence that Stanley had the opportunity to meet with the defendant the morning after the incident. Lori Stanley, the defendant's former girlfriend, testified that the morning after the assault, she and the defendant went to Keith Stanley's home before they visited with Croft. She said that the defendant was still wearing blood-stained clothes from the previous evening. Lori testified that she remained outside Stanley's residence but recalled that the defendant went inside. When he returned around 7:30 or 8:00 a.m., she and the defendant left for Croft's residence. Lori recalled that Croft picked her up and that the defendant walked the short distance to her residence, arriving two or three minutes later.

Keith Stanley, Lori's cousin, testified that the defendant arrived at his home between 6:30 and 7:00 a.m. wearing blood-stained clothes, and that the two talked outside as Stanley worked on his trucks. While Stanley testified that the defendant arrived alone, he noted that they spoke near two large dump trucks which could have

blocked his view of others. During their encounter, Stanley recalled that the defendant admitted that "he had raped and stabbed a girl with a screwdriver." When Stanley left for work around seven o'clock, he saw a man he assumed to be the defendant drive away alone in a pick-up truck.

Croft testified during the hearing on the defendant's motion for new trial that the morning after the assault, the defendant called her around 6:15 or 6:30 a.m. and arrived by foot at her apartment between 6:35 and seven o'clock. She described his clothes to be "splattered" with "red stuff," which she assumed to be ketchup, and saw a scratch on the defendant's cheek. She recalled that she picked up Lori from her apartment around nine o'clock that same morning.

■ Even with the possible inconsistencies between Keith and Lori Stanley's testimony, both witnesses provided evidence of a clear opportunity for the defendant and Keith Stanley to have spoken privately before the defendant arrived at Croft's home. While Croft's testimony may have added further discrepancies to surrounding detail, it would not have negated the defendant's opportunity to have made admissions to Stanley the morning after the assault. Further, even if defense counsel had interviewed Stanley before trial and he failed to disclose the rape admission or provided a statement inconsistent with his ultimate testimony, defense counsel's ability to impeach Stanley at trial would not have been significantly enhanced. In fact, the disclosure of critically important testimony for the first time at trial most probably provided defense counsel with greater fodder. Counsel argued to the jury that Stanley's testimony about the defendant's admission was "an outright lie" because it was unbelievable that he would reveal such important evidence for the first time at trial. Therefore, we conclude that trial counsel's failure to question Stanley before trial does not undermine confidence in the outcome of the case, *see Henderson*, 141 N.H. at 618, 689 A.2d at 1339 (State standard for actual prejudice), or render the result of the trial unreliable or the proceeding fundamentally unfair, *see Gonzalez*, 143 N.H. at 704, 738 A.2d at 1257 (federal standard for actual prejudice).

Accordingly, the trial court's denial of the defendant's motion for new trial was not error. All issues raised in the notice of appeal but not briefed are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652, 708 A.2d 682, 685 (1998).

*Affirmed.*

NADEAU, J., did not sit; the others concurred.