Grafton
No. 99-633

THE STATE OF NEW HAMPSHIRE

v.

JASON KING

August 28, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Carl D. Olson*, assistant appellate defender, of Littleton, by brief and orally, for the defendant.

NADEAU, J. The defendant, Jason King, appeals his convictions in the Superior Court (*Smith*, J.) on charges of criminal threatening, RSA 631:4 (Supp. 2000); conspiracy to commit simple assault, RSA 629:3 (Supp. 2000); and criminal trespass, RSA 635:2 (1996). The defendant alleges the trial court violated his constitutional right to present all proofs favorable by barring relevant exculpatory testimony of his co-venturer and brother, Christopher King. We affirm.

The relevant facts follow. On March 7, 1999, a group of people including the defendant, Christopher, Wendell Trombley and

Michael Wentworth went to the home where the relevant events took place. A State witness testified that he saw all four men standing "just inside the doorway," and that they were yelling and angry. The State witness testified that, while inside the home, the defendant "stepped forward and said, 'How do you like it now that we got all our posse here,' or 'our home boys,' or [something like that]." There was further testimony that Christopher removed a baseball bat from his pocket and made threatening comments and gestures.

According to the State's witness, at some point the police were called, and the defendant left the scene. When a police officer arrived, he saw Christopher, Michael and Wendell outside the victim's home. The three were arrested, and the next day the defendant turned himself in to the authorities.

At trial, the defendant denied ever being inside the victim's home, and also denied ever having a plan to commit any crimes with the other three men. The defendant characterized his purpose for going to the victim's house as an attempt to settle a juvenile disagreement between the victim and himself. If the jury believed the defendant regarding these matters, the charged crimes would not have been proved — that is, there would be no burglary if the defendant never entered the home, there would be no conspiracy if there were no plan, and there would be no criminal threatening if the defendant acted peacefully.

Michael Wentworth testified that the purpose for going to the house was "to talk it out with them, settle the problem," and that there was no plan to cause any harm. Michael also testified that no member of the group entered the home. Finally, a transcript of testimony given by Wendell Trombley was in evidence, which contained Wendell's testimony that the defendant never entered the victim's house. Wendell, however, did not testify, exercising his Fifth Amendment right against compelled self-incrimination.

The trial took place on August 3, 1999. At a pretrial motions hearing on that date, defense counsel indicated his intention to call Christopher to the stand to buttress the defendant's position that he never entered the victim's home. Apparently, Christopher was hospitalized on August 3, and the defendant filed a motion seeking to delay the trial for one day until Christopher's release. The court was informed that Christopher was under indictment for the events described above and had retained counsel. Counsel, however, was on vacation until the following week. The court indicated its concern regarding Christopher's right against compelled self-incrimination

and allowing him to answer questions without his attorney. The following exchange ensued:

[Defense Counsel:] Perhaps what we need to do is continue the trial until the following week so that we can have Chris come in with his attorney on Monday and have ten minutes of testimony.

[Prosecutor:] The State objects to that, your Honor. First of all, there's [*sic*] three trials next week. The defendant had mentioned this option yesterday. We have no idea about our witnesses' availability for next week. We flew one of the witnesses up here from out of state to be here today. The State is ready to go forward today. You know, the defendant is the one who chose to file this motion yesterday, and this case should not be continued. It should go forward this morning. Thank you.

[Defense Counsel:] I'm not asking to continue it. I want to go forward today and just have a break until next week when Chris King and his attorney could be available.

The Court: That motion is denied, without any question. If we go ahead at all today it will be with the understanding that if Mr. [Christopher] King is available and shows up here he will only be allowed to give his name and address.

Later, during the trial, the defendant called Christopher to the stand. Defense counsel requested that the court ask Christopher whether or not he wished to assert his Fifth Amendment rights. The court refused, stating that he would not allow Christopher to waive his Fifth Amendment privileges and accordingly excused him from the stand.

The defendant appeals this ruling, arguing it violated his State and Federal constitutional due process rights as well as his right to present all proofs in his favor. N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. We first examine the defendant's asser-

tions under the New Hampshire Constitution. *See State v. Ball*, 124 N.H. 226, 231 (1983). Because Part I, Article 15 of the New Hampshire Constitution is at least as protective of the due process rights of the accused as the Federal Constitution, we address his claims under the State Constitution and look to federal cases for guidance only. *See id.* at 233; *State v. Drewry*, 139 N.H. 678, 683 (1995).

■ In order to establish a violation of Part I, Article 15 of the State Constitution, "a defendant must show that the testimony he was precluded from introducing would have been material and favorable to his defense in ways not merely cumulative of other evidence." *State v. Adams*, 133 N.H. 818, 826 (1991) (adopting the federal standard for proving a violation of the "compulsory process" clause for purposes of demonstrating a violation of the corresponding rights under Part I, Article 15).

■ In his brief, the defendant asserts that Christopher would have testified that the defendant did not enter the house, that he did not brandish a bat, and that there was no plan to commit the crime of assault. The State argues, and the record substantiates, that Michael Wentworth and the defendant testified that the defendant did not enter the victim's home. Wendell Trombley offered this same account via his probable cause hearing testimony, which was in evidence. Further, Michael and Wendell recounted that there was no plan or agreement to assault or injure anyone that evening. Christopher's testimony would have been cumulative of this other testimony. *See State v. Davis*, 143 N.H. 8, 12 (1998). As the defendant's brief avers no additional testimony that Christopher King would have presented, we conclude his testimony would have been cumulative, and accordingly affirm.

Although the trial court did not offend the constitutional rights of the defendant, its ruling to exclude Christopher's testimony was error. We have, on other occasions, taken the opportunity to instruct the trial courts on difficult issues important to the smooth functioning of the criminal justice system even though error did not require reversal. *See State v. McGlew*, 139 N.H. 505, 508-09 (1995). Because it is an issue of first impression whether trial judges can *sua sponte* assert the Fifth Amendment rights of witnesses, we address this issue.

In *State v. Richards*, 129 N.H. 669, 671-73 (1987), the trial court refused to allow a defendant to ask any questions of a witness who exerted an unlimited privilege against self-incrimination. We reversed, stating that, as a rule, a witness must refuse to answer each

particular question as it is asked. *Id.* at 673. "The rationale underlying this rule rests upon the fact that the privilege is a limited one, protecting the witness from responding to questions only if the answers would in fact have a tendency to subject him to prosecution." *Id.* (quotation omitted).

■ Therefore, when a witness asserts his or her Fifth Amendment rights, the trial court must determine "whether a truthful and complete response might be incriminating and in most cases the court will be unable to give reasoned consideration to the privilege claim until the witness' refusal to answer a particular question is viewed in the light of all of the circumstances of the particular case." *Id.* (quotation and ellipsis omitted). Thus, in order to legitimately exclude testimony based upon the witness's Fifth Amendment right, the trial court must conduct a so-called *Richards* hearing to determine if the privilege is being properly invoked. *See, e.g., State v. Caplin*, 134 N.H. 302, 308-09 (1991).

This case, however, is one of first impression in New Hampshire because here the witness did not assert his Fifth Amendment privilege. Instead, the trial court refused to permit the witness to waive his privilege in the absence of his attorney. Both the State and Federal Constitutions provide a privilege against self-incrimination. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. V.

■ The privilege against self-incrimination is a personal one. *See Drewry*, 139 N.H. at 684. Accordingly, if a witness desires the protection of the privilege, the witness must claim it him or herself. *See Rogers v. United States*, 340 U.S. 367, 370 (1951); *accord* 8 J. WIGMORE, EVIDENCE § 2196, at 111 (McNaughton rev. 1961). Thus, courts have concluded it is error for a trial court to bar a witness from testifying based upon its own concerns regarding that witness's privilege before the witness has claimed that right. *See, e.g., State v. Melina*, 210 N.W.2d 855, 856 (Minn. 1973); *State v. Brown*, 59 So. 2d 431, 434 (La. 1952).

■ The State argues that the court had an obligation to protect not only Christopher's Fifth Amendment right against self-incrimination, but also his Sixth Amendment right to counsel, which attached when he was indicted. Assuming without deciding the merit of this argument, such an obligation does not obviate the need for a *Richards* hearing. We agree that a witness asserting the privilege against self-incrimination ought to be represented by counsel during the hearing. That the witness's lawyer is on vacation does not excuse the need for a *Richards* hearing. The court was asked "just

have a break until [the following] week when Chris King and his attorney could be available." At that point, the court could have continued Christopher's testimony until his lawyer returned the following week, or the court could have appointed a lawyer for Christopher to allow the *Richards* hearing to proceed. The court erred, however, when it *sua sponte* asserted the privilege against self-incrimination on the witness's behalf. Nevertheless, because this testimony would have been only cumulative, it does not offend the defendant's constitutional rights.

*Affirmed.*

BROCK, C.J., and BRODERICK and DALIANIS, JJ., concurred.