Hillsborough-northern judicial district
No. 2003-604

IN RE JUVENILE 2003-604-A *& a.*

Argued: January 12, 2005
Opinion Issued: February 22, 2005

*Kelly A. Ayotte,* attorney general (*Laura E. B. Lombardi,* assistant attorney general, on the brief and orally), for the State.

*Ruddock & Innes, P.A.,* of Bedford (*Scott F. Innes* on the brief and orally), for the father.

DUGGAN, J. Following a hearing, the father was found to have abused his three sons. *See* RSA 169-C:3, II(d) (2002). On appeal, he argues that the Superior Court (*Brennan,* J.) erred in allowing Scott Spencer, a child protective worker, to testify about the content of interviews he conducted with the children. We affirm.

In the spring of 2002, the mother of the three boys contacted the New Hampshire Division for Children, Youth and Families (DCYF) alleging that the father was abusing them. The mother and the father were divorced and the father had primary physical custody of all three boys. Spencer investigated the allegation and concluded it was unfounded.

In August 2002, the mother again contacted DCYF alleging that the father was abusing the boys. As part of his investigation of that allegation, Spencer went to the Tabernacle Baptist School, a private school in Litchfield, to interview the children. He brought a video camera to record the interviews. At the school, the principal agreed to allow the interviews, but asked Spencer not to record them. Spencer agreed.

During the interviews, the oldest child told Spencer that when he broke one of his father's rules at home, his father would strike him in the leg with his fist. The boy said that he had bruises in the past and did not feel safe at home. The younger two boys told Spencer that when they misbehaved, their father would strike them in the leg with his fist; that this happened two or three times a week; and that they did not feel safe at home. Later, the boys' mother showed Spencer photographs of bruises on the oldest boy's arm.

Spencer filed abuse petitions in the Milford District Court. After an adjudicatory hearing, *see* RSA 169-C:18 (2002) (amended 2002, 2004), the district court found that the father had abused his sons. The father appealed for a *de novo* hearing in superior court.

Prior to the superior court hearing, an issue arose about whether Spencer might be criminally liable for conducting the interviews of the three boys without videotaping them. *See* RSA 169-C:38, V (2002), :39 (2002). The court scheduled a *Richards* hearing, *see State v. Richards*, 129 N.H. 669 (1987), "to determine whether the witness' testimony would violate his right not to testify against himself." Prior to the hearing, however, the Hillsborough County Attorney granted Spencer immunity from prosecution. *See* RSA 516:34 (1997). The father then filed a motion *in limine* arguing that because Spencer violated RSA 169-C:38, V, the court should exclude all of Spencer's testimony about the interviews. The court ruled that exclusion of evidence was not an available remedy for a violation of the statute.

Based upon the evidence at the hearing, the court found that the father had abused the children, that the children were afraid of the father, that their fear had caused physical symptoms and emotional problems and that the father's own testimony "made it clear that he believes that his bruising physical punishment of the children is justified under his discipline policy."

On appeal, the father argues that: (1) immunity under RSA 516:34 is only available in criminal proceedings; (2) the recording requirements of RSA 169:38, V apply to interviews conducted at a privately owned and operated school; (3) under the statutory scheme, a violation of RSA 169:38, V requires that the interviews be excluded from evidence; and (4) due process and equal protection require the exclusion of Spencer's testimony.

The State argues that: (1) the father lacks standing to challenge the grant of immunity; (2) immunity is not limited to criminal proceedings; (3) the recording requirements of RSA 169-C:38, V, only apply to interviews conducted in public places; (4) RSA chapter 169-C does not require exclusion of interviews conducted in violation of that statute; and (5) the failure to exclude evidence of the interviews did not violate due process or equal protection.

The interpretation of a statute is a question of law, which we review *de novo. Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004). The starting point in any statutory interpretation case is the language of the statute. *Crowley v. Frazier*, 147 N.H. 387, 389 (2001). We will not consider what the legislature might have said or add words that the legislature did not include. *Id.*

RSA 169-C:38, IV provides that DCYF caseworkers investigating allegations of abuse have "the right to enter any public place, including but not limited to schools and child care agencies, for the purpose of conducting an interview with a child." RSA 169-C:38, V provides that "[f]or any interview conducted pursuant to paragraph IV, the interview with the child shall be videotaped if possible. If the interview is videotaped, it shall be videotaped in its entirety. If the interview cannot be videotaped in its entirety, an audio recording of the entire interview shall be made."

The father argues that, even though RSA 169-C:38, IV on its face applies only to "any public place," the word "schools" includes both public and private schools. He relies upon the definition of "child care agency" which includes any "organization . . . established for profit or otherwise," see RSA 169-C:3, VI; RSA 170-E:25, II (2002), to argue that because "child care agency" includes both private and public agencies, the definition of schools must also encompass both public and private schools.

The father's argument would have us read words into the statute. The statute is specifically limited to "public places." RSA 169-C:38, IV. It is not our task to expand it to cover private schools. See Crowley, 147 N.H. at 389. Although it is clear on its face that the statute does not apply to private schools, we note that the legislative history supports our reading of the statute. As originally introduced in 1988, the legislation covered both public and private places, but it was amended in the House of Representatives to cover only public places. N.H.H.R. JOUR. 524 (1988); N.H.S. JOUR. 987 (1988) (Senator White remarking that the amendment "allows access to the public schools and other public places").

█ The father concedes that the school here was a private school. Because we hold that RSA 169-C:38, IV does not apply to interviews conducted in a private school, we reject the father's argument that Spencer violated RSA 169-C:38, V.

The father next argues that to accept the argument, as we did above, that the statute applies only to public schools and not to private schools violates equal protection. We conclude that this argument was not adequately briefed and, therefore, decline to address it. See In re Tracy M., 137 N.H. 119, 123 (1993).

Because we hold that RSA 169-C:38, V only applies to interviews conducted in public places, we need not address the father's remaining arguments which assume that Spencer violated RSA 169-C:38, V.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.