Hillsborough
No. 89-460

### THE STATE OF NEW HAMPSHIRE

v.

### PINARDVILLE ATHLETIC CLUB

July 24, 1991

*John P. Arnold,* attorney general (*Jeffrey A. Meyers,* attorney, on the brief, and *David S. Peck,* senior assistant attorney general, orally), for the State.

*Emile R. Bussiere P.A.,* of Manchester (*Richard J. Walsh* on the brief and orally), for the defendant.

BATCHELDER, J. The defendant, Pinardville Athletic Club (PAC), was convicted after a jury trial in Superior Court (*Murphy,* J.) on two counts of permitting gambling on its premises, RSA 647:2. Challenging its conviction, PAC raises four issues on appeal. First, it maintains that its requested jury instruction, that the State had to prove that PAC's board of directors authorized the alleged activity, was improperly denied. Second, PAC asserts that the trial court erred in denying its motions to dismiss based on the State's failure to introduce sufficient evidence to establish the offense. Third, it argues that the trial court's jury instruction improperly suggested that PAC had an affirmative burden to prove that its conduct fell within a recognized exception to the gambling statute. Finally, PAC contends that the trial court erroneously denied its request to reconvene and poll the jury to determine whether it had been influenced by the publication of an article in the *Manchester Union Leader,* which contained information not admissible at trial. For the reasons set forth below, we affirm.

On the morning of July 23, 1988, New Hampshire State Troopers Cheever Newhall, Jr., and Arthur Wiggin, who were working undercover, entered PAC with William Gross, a member of the club who cooperated with the State Police in their investigation. The troopers observed five "video poker machines," which were in use by other customers. The machines operated like a traditional poker game, but the machines would display the cards that had been "dealt," and the player would then bet points which were accumulated by inserting money into the machine and by playing other "hands." As machines became available, the men sat down to play. When Gross, who played first, had amassed a number of points on the machine, he summoned the bartender, who cleared the points from the machine and recorded Gross' name and point tally in a notebook that she had retrieved from behind the bar.

Trooper Newhall deposited several dollar bills into two of the machines, made wagers, drew cards, and amassed a total of one-hun-

dred points on one machine and one-hundred-ten points on the other. After depositing a five-dollar bill, Trooper Wiggin played one of the video poker machines and tallied approximately forty points. After the troopers had completed playing, the bartender again cleared the machines, and recorded the total points earned in the notebook under Gross' name. The troopers then left the club, but returned the following day, again with Gross. Gross asked the bartender on duty if he could have his "envelope," which the bartender produced from a drawer under the cash register. The envelope contained $112.50 in cash.

On appeal, PAC first argues that the trial court should have instructed the jury that the State was required to prove that PAC's board of directors "voted to allow the activity complained of by the State." The State contends that this issue was not properly preserved for appellate review and, even if it were, the trial court did not abuse its discretion when it denied PAC's requested jury instruction.

■ As a threshold issue, we note that the question of the propriety of the denial of PAC's requested jury instruction was properly preserved. Although defense counsel did not clearly articulate the reason for his objection to the trial court's instruction, that reason was known to the trial court, because it had previously read PAC's proposed jury instruction and had denied it. Consequently, "[c]ounsel's objection gave the trial court an adequate opportunity to reconsider its ruling. . . ." *State v. Judkins*, 128 N.H. 223, 225, 512 A.2d 427, 428 (1986).

■■ Whether a requested jury instruction will be given is a decision to be made by the trial court in the sound exercise of its discretion. *State v. Wood*, 132 N.H. 162, 164, 562 A.2d 1312, 1314 (1989). Although PAC had requested that the trial court instruct the jury that the State had to show that PAC's board of directors voted to allow the illegal activity, no such requirement exists. PAC's request would allow a corporation to shield itself from criminal liability by fortuitously neglecting to vote and record its support of any illegal conduct. At trial, the jury was instructed that "[a] corporation may be held criminally responsible for criminal acts performed by its agents and employees on its [*sic*] behalf of the corporation if the agents and employees were acting within the scope of their authority or their employment." We find no error in this instruction.

Second, PAC maintains that there was insufficient evidence to establish the offense of gambling as defined by RSA 647:2 and, there-

fore, that the trial court erred in denying its motions to dismiss. Specifically, PAC argues that RSA 647:2, IV defines gambling as "risk[ing] something of value upon a future contingent event not under his [or her] control or influence, upon an agreement or understanding that he [or she] will receive something of value in the event of a certain outcome." It contends that the evidence was insufficient to prove: (1) "something of value"; (2) "not under his [or her] control or influence"; and (3) "an agreement or understanding." PAC's arguments, however, are without merit.

██ In an appeal based upon the sufficiency of the evidence, the defendant bears the burden of showing that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Hunter*, 132 N.H. 556, 561, 567 A.2d 564, 567–68 (1989). The record clearly reveals a sufficient basis upon which a rational trier of fact could have found that the State satisfied every requirement of RSA 647:2. First, the troopers testified that they inserted one-dollar and five-dollar bills into the machines. Although they were not able to recall how many bills they had put into the machines, there was no requirement that the State quantify the amount of money inserted to prove that "something of value" was wagered. Second, although a player could control the points that he or she bet and, therefore, a skilled player would likely tally more points than would a novice player, the selection of cards dealt, rather than the amount of money wagered, was "not under [the player's] control." Finally, the troopers presented testimony at trial that they had observed several people playing the machines and had watched the bartender record the players' names and point totals. Trooper Newhall testified, "My understanding was that the points that we accumulated that day would be recorded, and that you'd have to come back the next day to receive your pay off." Thus, there was an "understanding" that they would receive something of value in return for inserting money and playing the machines. Viewing this evidence in the light most favorable to the State, we hold that the jury could reasonably exclude all other rational conclusions and find beyond a reasonable doubt that PAC engaged in illegal gambling as defined by RSA 647:2.

Third, PAC further contends that the trial court's instruction to the jury suggested that PAC had an affirmative burden to prove that its conduct fell within a recognized exception to the gambling statute. In opposition, the State asserts that the trial court properly instructed the jury on all elements of the offense.

■ The propriety of a disputed jury instruction is determined by considering the instructions in their entirety. *State v. Wood*, 132 N.H. at 164, 562 A.2d at 1314. "Reversal is not warranted unless the charge, as a whole, does not fairly cover the issues of law of the case." *State v. Saucier*, 128 N.H. 291, 299, 512 A.2d 1120, 1126 (1986). The trial court instructed the jury:

> "The burden, as I say, is on the State to prove the defendant guilty beyond a reasonable doubt. The defendant has no such obligation to prove anything.
>
> . . . .
>
> . . . A person, including a corporation, is guilty of a crime if he knowingly and unlawfully permits gambling in any place under his control. What does that require the State to prove? The State must prove beyond a reasonable doubt: number one, that the defendant acted knowingly; number two, that is it [*sic*] . . . not lawful. And the Court will instruct you that the defendant has the obligation in this particular case to show if there was an exception to the gambling statute, and he did not, so it is not lawful; . . . Four things. Knowingly, unlawfully, permitted gambling, on premises under defendant's control. That's what the State must prove in order to prove it's [*sic*] case.
>
> . . . .
>
> . . . The State must prove that the defendant acted unlawfully, as I have indicated. That means, not specifically authorized by law; and the defendant has pointed out nothing that authorizes this by law."

During deliberation, the jury submitted a question concerning the essential elements of the offense. In response to that question, the trial court instructed the jurors in writing that

> "the State must prove beyond a reasonable doubt . . .
>
> 1. That the Defendant acted knowingly, as I have defined that term.
>
> 2. That the Defendant permitted gambling, as defined during the course of my instructions.
>
> 3. That the premises where it is alleged to have taken place were under the Defendant's control.
>
> 4. That it was not lawful."

■■ While there is ample support in our case law for the proposition that the defendant need not prove the applicability of a statu-

tory exception (the burden being upon the State to prove that an exception does not apply), *State v. Bell*, 125 N.H. 425, 431, 480 A.2d 906, 911 (1984); RSA 625:10, :11, the instruction here falls short of infecting the charge with error because, viewing the charge as a whole, including the supplementary written instruction, the trial court adequately conveyed to the jury the applicable law of the case. Additionally, some courts have held that an ambiguous oral instruction concerning the burden of proof may subsequently be corrected by a written instruction correctly placing the burden of proof on the State. *Wood v. Marshall*, 790 F.2d 548, 551 (6th Cir. 1986), *cert. denied*, 479 U.S. 1036 (1987); *see also Williford v. Young*, 779 F.2d 405, 408 (7th Cir. 1985) (unclear or ambiguous instruction as to the proper allocation of the burden of persuasion may be rehabilitated by a proper instruction that either specifically clarifies the instruction or generally places burden properly on State as to every element of the offense), *cert. denied*, 476 U.S. 1120 (1986). Consequently, any confusion that the oral charge may have created concerning the burden of proof on the element of unlawfulness was clarified by the trial court's written instruction that the State was required to prove beyond a reasonable doubt that the activity was unlawful. Accordingly, we find no error in the trial court's charge.

Finally, PAC argues that the trial court erred in denying its request to reconvene and poll the jury to determine if it had been influenced by an article in the *Manchester Union Leader*, which contained information that was not admissible at trial. The State maintains, however, that the trial court did not abuse its discretion in denying PAC's request.

The decision whether to poll a jury is a matter within the sound discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be overturned by this court. *State v. Pugliese*, 122 N.H. 1141, 1147, 455 A.2d 1018, 1022 (1982). The *Manchester Union Leader* published an article on the second day of trial, several hours before the jury began its deliberations, which reported that five other clubs were charged in superior court with the offense of gambling, and also referred to the seizure of thirty-two video poker machines, the arrest of thirteen persons, and the recovery of $11,884.80 in cash. Unaware of the article until after the jury's verdict was returned, PAC moved for post-conviction relief, requesting a jury poll. However, PAC offered the trial court nothing more than its conjecture that the integrity of the jury was infected by the *Union Leader* article.

"The speculation or surmise of defendant's attorney, unsupported or uncorroborated either by sworn affidavit or statements of any party, that there was any impropriety, wrongdoing or violation of the oath of a juror affecting the verdict, does not require the trial court to examine or interrogate or interview the jurors after their verdict is revealed."

*State v. Donovan*, 120 N.H. 603, 607, 419 A.2d 1102, 1104–05 (1980). Accordingly, we find no error in the trial court's ruling.

*Affirmed.*

THAYER, J., did not sit; the others concurred.