Strafford
No. 91-014

### THE STATE OF NEW HAMPSHIRE

v.

### KELLY D. MILLS

July 27, 1992

*John P. Arnold*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief, and *Janice K. Rundles*, attorney, orally), for the State.

*Patrick W. Fleming*, of Hampstead, by brief and orally, for the defendant.

BATCHELDER, J. The defendant was convicted of second degree assault, RSA 631:2, after a jury trial. On appeal, he claims that the

Superior Court (*Nadeau*, J.) abused its discretion in finding the four-year-old victim competent to testify and in denying the defendant's motion for a new trial on the ground of newly discovered evidence. For the reasons that follow, we affirm.

Shane Kelley is the child of Jerry Kelley and Barbara Mills, who are divorced. Barbara Mills is the wife of the defendant. In January 1989, Shane was three years old and living with his mother and the defendant; he visited his father's home on alternate weekends.

At 6:00 p.m. on Friday, January 13, 1989, Shane's father and step-mother Tess arrived at the defendant's home to pick up Shane for the weekend. Two hours later, while she was bathing Shane, Tess noticed severe bruising on him. Shane told her that the defendant had spanked him for not remembering the color blue and refusing to stay in the corner. After telephoning Barbara Mills, who hung up on her, Tess called the police, who advised her to come to the station immediately.

Jerry and Tess Kelley brought Shane to the police station, and the three were then taken by the police to the hospital emergency room, arriving at approximately 9:30 p.m. Dr. Tim Donnelly, the attending physician, examined Shane and found extensive bruising on his but-tocks, legs, arms, and back. Photographs were taken of the bruises. Because of the pattern and degree of bruising, Dr. Donnelly sus-pected child abuse. Speaking with Dr. Donnelly independently from his father and stepmother, Shane stated that the defendant had caused the injuries with his hand. In the doctor's opinion, from the appearance of the bruises, they could not have been sustained within three or four hours but were probably over six hours old and likely between twelve and twenty-four hours old.

On the day in question, Shane had been at a babysitter's from 6:30 a.m. to 5:00 p.m. At the defendant's trial, the babysitter testified that she never spanked Shane. She had noticed bruises on his thighs that morning, as well as what appeared to be a rash on his buttocks. Dr. Donnelly had testified that in the immediate period after injury, the reddened area could be confused with a rash.

The defendant testified that he had been home with Shane after 5:00 p.m. the previous night and admitted having spanked Shane in the past, but he denied spanking him on January 12 or 13. Shane testified that the defendant had spanked him at the defendant's house and identified the photographs of his bruises. According to Shane, he was spanked because he "didn't remember about the blue."

■ Prior to trial, a hearing was conducted to determine whether Shane, then four years old, was competent to testify. After brief initial questioning by the prosecutor, the trial judge engaged in a lengthy colloquy with the child. The judge concluded that Shane was competent to testify based on his ability to observe and narrate "as well as any four-year-old" and on Shane's statement that "he wants to tell the truth." Defense counsel objected, stating that "when [the court] asked [Shane] if he knew what would happen to him if he didn't tell the truth or it was important for him to tell the truth, I don't think he showed a clear understanding of the importance between telling the truth and not telling the truth." The judge responded that he thought that "for a four-year-old he's demonstrated that he—it's important to tell the truth." In his charge to the jury, the trial judge instructed the jurors to "apply particular caution" in evaluating the testimony of a child. The defendant argues that the trial judge erred in (1) finding that Shane understood the obligation to tell the truth; (2) finding that he demonstrated an ability to remember and narrate events; and (3) failing to determine whether Shane could distinguish between truth and falsehood. The defendant below, however, objected to the competency determination solely on the first ground asserted here, *i.e.*, that the witness had not demonstrated an understanding of the obligation to testify truthfully. Accordingly, the other grounds not having been properly preserved, they will not be considered on appeal. *State v. McAdams*, 134 N.H. 445, 447, 594 A.2d 1273, 1273 (1991).

■ Whether a witness is competent to testify is a question of law for the trial court. *State v. Blum*, 132 N.H. 396, 399, 566 A.2d 1131, 1132 (1989). New Hampshire Rule of Evidence 601 sets forth the law governing competency:

> "(a) *General rule of competency.* Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> (b) *Incompetence of a witness.* A person is not competent to testify as a witness if the court finds that the witness lacks sufficient capacity to observe, remember and narrate as well as understand the duty to tell the truth."

The import of Rule 601(a) is to establish a presumption of witness competency that may be overcome "by statute or [other] rules," *id.*, or by findings pursuant to Rule 601(b). *State v. Aikens*, 135 N.H. 569, 571, 607 A.2d 948, 949 (1992). "Absent an abuse of discretion, this

court, which must act on a cold record, will not disturb the trial court's determination of competency when there is evidence to support it." *State v. Scarlett*, 121 N.H. 37, 39, 426 A.2d 25, 27 (1981).

■ As for the trial court's finding that Shane understood the obligation to tell the truth, the record shows that the judge first ascertained from the witness that the prosecutor had spoken with him on the subject. A colloquy then occurred, during which Shane stated that he wanted to tell the truth and acknowledged that his parents would be upset if he did not tell the truth. In ruling Shane competent to testify, the trial court was impressed that "[h]e said he wants to tell the truth, he obviously is able to observe and understand things." These findings were made after an extensive examination on subjects of interest to a four-year-old (*e.g.*, his favorite cartoon character, the circus, playing with his friend), and relating to his observations of the bench and the judge (*e.g.*, "How come you got that dress thing on?"). That Shane's answers came primarily in response to leading questions is not problematic, as such an approach is neither out of the ordinary nor impermissible where the witness is a young child. *See* N.H. R. Ev. 611 (reporter's notes) (discretion to permit leading questions on direct examination "when the witness is very young").

■ Nor is it significant that Shane did not utter any particular "magic words" indicating comprehension of the obligation to testify truthfully. *In re Gerald*, 471 A.2d 219, 221 (R.I. 1984). What is significant is the trial judge's overall firsthand impressions of Shane's responsiveness and desire to be truthful. *Id.* "[B]ecause so much depends upon his observation of the witness," *State v. Pettis*, 488 A.2d 704, 706 (R.I. 1985), the trial court's conclusion that Shane was competent is entitled to great deference. The question is not whether we would have ruled as the trial court did, but whether there is sufficient evidence in the record to ground the finding. Our review of the record reveals sufficient support for the trial court's determination of competency. We find no abuse of discretion.

The defendant's second contention on appeal is that he is entitled to a new trial based on newly discovered evidence; namely, the purported post-trial recantation by the victim of his accusation against the defendant. At a hearing on the defendant's motion for a new trial, Barbara Mills testified that she asked her son Shane, several months after her husband was convicted, if the defendant had really hit him. He said "no," according to her testimony, and stated that he had told the judge the defendant had hit him because his father had promised

him a toy jeep if he told the truth. Shane told her that his father had told him that "the truth" was that the defendant had hit him. Shane's mother further testified that Shane had told her that it was his father who had hit him. She admitted that, at the time Shane made the statement, she and Shane's father were embroiled in an ongoing custody dispute. Shane, although available, did not testify at the hearing.

 Recanted testimony is a species of newly discovered evidence for purposes of a new trial motion. *See* 58 AM. JUR. 2d *New Trial* § 440 (1989). In order to prevail on a motion for a new trial on the ground of newly discovered evidence, the moving party must show

> "(1) that [he] was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible, material to the merits, and not cumulative; and (3) that [the evidence is] of such a character that a different result will probably be reached upon another trial."

*State v. Abbott*, 127 N.H. 444, 450, 503 A.2d 791, 795 (1985) (citations and quotations omitted). When the purported new evidence is a recantation by a prosecution witness, the third prong of this test will not be met if the trial judge finds as a threshold matter that the recantation is not credible. *See People v. Minnick*, 214 Cal. App. 3d 1478, 1482, 263 Cal. Rptr. 316, 318 (1989) (in deciding motion for new trial based upon recantation, trial judge determines whether new evidence credible, then whether different result on retrial probable). Whether to grant a motion for a new trial is a question of fact for the trial judge, whose decision will not be overturned unless it is clearly unreasonable. *Abbott*, 127 N.H. at 450, 503 A.2d at 795.

 After hearing all the new evidence, including a tape-recorded interview of the child in which Shane stated that the defendant did not hurt him, the trial court concluded that the evidence was not "of such a character that a different result will probably be reached upon another trial." Noting that Shane's post-trial statements and those of the witnesses who reported them "must be viewed in the context of the bitter custody and marital dispute which is taking place," the court found them lacking in credibility. "We will not overturn the credibility ruling of the factfinder, who is in the best position to make such a determination . . . ." *State v. Chase*, 135 N.H. 209, 215, 600 A.2d 931, 935 (1991). Having upheld the trial court's finding that the new evidence was not credible, we will not address

the defendant's argument that part I, article 15 of the State Constitution ought to guarantee him a new trial where he produces credible new evidence of recantation. After reviewing the record, we are convinced that the trial court's decision to deny the motion for a new trial was not clearly unreasonable.

*Affirmed.*

BROCK, C.J., and JOHNSON, J., dissented; the others concurred.

BROCK, C.J., dissenting: The criteria for determining whether a witness is competent are: (1) the ability to observe, remember, and narrate; and (2) an understanding of the duty to tell the truth. N.H. R. Ev. 601(b); *State v. Keyes*, 114 N.H. 487, 490, 322 A.2d 615, 617 (1974). The trial court has great discretion in the manner in which the determination of competency is made, *see, e.g., State v. Blum*, 132 N.H. 396, 399, 566 A.2d 1131, 1132–33 (1989), but in deciding whether the witness is competent, it *must* consider the above criteria. In my opinion, the trial court failed to adequately question the youth on his understanding of the duty to tell the truth. Accordingly, I respectfully dissent.

Initially, I must point out that while I agree with the majority on the preservation of the issue of the importance of telling the truth, I also believe that the issue of whether Shane could distinguish between truth and falsehood was adequately preserved. Following the competency hearing, the court ruled that Shane was competent to testify. The defendant immediately objected to the ruling and stated:

> "I think my main area for the objection is that when you asked him if he knew what would happen to him if he didn't tell the truth or it was important for him to tell the truth, I don't think he showed a clear understanding of the importance between telling the truth and not telling the truth."

We have previously held that when the court is apprised of the general theory behind the objection such that "it is given an adequate opportunity to reconsider its ruling," this is sufficient to preserve the issue on appeal. *State v. Pinardville Athletic Club*, 134 N.H. 462, 465, 594 A.2d 1284, 1286 (1991); *see also State v. Baird*, 133 N.H. 637, 640, 581 A.2d 1313, 1315 (1990); *State v. Judkins*, 128 N.H. 223, 224–25, 512 A.2d 427, 428 (1986).

The defendant's objection, although specific in its wording, is sufficient to alert the court to the general nature of the defendant's theory. It encompasses not only the ability of the witness to tell the truth, but also his concern that the witness know the difference be-

tween truth and falsehood. The trial court was alerted to the defendant's general theory, *i.e.*, the witness's ability to understand his duty to tell the truth under Rule 601(b). Accordingly, because the defendant objected at the pretrial hearing, the issues of whether the witness understood both the difference between a truth and a lie and the importance of telling the truth were properly preserved for our review. *See State v. Simonds*, 135 N.H. 203, 205, 600 A.2d 928, 929 (1991).

I now turn to the issue of whether the trial court erred in ruling that the four-year-old witness was competent. Upon a review of the questions asked and the corresponding responses, we must decide whether the trial court abused its discretion in allowing Shane to testify before the jury. A review of the record shows only one colloquy on the issue of Shane's "capacity to . . . understand [his] duty to tell the truth":

> "THE COURT: . . . Do you want to tell the truth when people ask you things?
>
> (Witness nods head affirmatively)
>
> THE COURT: Why do you want to tell the truth?
>
> SHANE KELLEY: I want to.
>
> THE COURT: Hmm?
>
> SHANE KELLEY: I want to.
>
> THE COURT: You want to?
>
> (Witness nods head affirmatively)
>
> THE COURT: Does something happen if you don't tell the truth? Does anything bad happen or somebody do something to you if you don't tell the truth? Will your mommy be upset and your daddy be upset?
>
> (Witness nods head affirmatively)
>
> THE COURT: I see you're saying 'yes,' putting your head up and down, 'yeah.'"

At best, the witness "want[s] to tell the truth," but this is a far cry from acknowledging a "duty" to tell the truth. More importantly, nowhere in the record does the court even inquire into whether the four-year-old child understands the difference between the truth and a lie.

When determining whether a youth "understand[s] the duty to tell the truth," Rule 601(b), the trial court must first ascertain that the

child understands the difference between the truth and falsehood. Once this initial determination is made, the court must then make sure the witness appreciates the obligation to tell the truth. *See generally* Myers, *The Testimonial Competence of Children*, 25 J. FAM. L. 287, 327–35 (1986–87); *see also* 81 AM. JUR. 2d *Witnesses* § 89 (1976). The court must not only determine that the youth understands and can express intelligent answers to the questions put forth, but it must also be satisfied that the witness demonstrates "a sense of *moral responsibility* [and] a consciousness of the duty to speak the truth." *Goy v. Director General*, 79 N.H. 512, 514, 111 A. 855, 856 (1920) (citation and quotation omitted); 2 WIGMORE ON EVIDENCE § 506, at 713 (Chadbourn rev. 1979).

Although the witness need not utter any "magic words" indicating that he or she understands the difference between the truth and a lie or the importance of telling the truth, some indication of the witness's understanding must be apparent on the record. In this case, there were neither hypothetical questions posed to the child nor any other dialogue by which it may be determined that the child understood his "duty to tell the truth." Further, the court's determination of whether the child understood the consequences of not telling the truth rested on a three-part compound question to which the witness merely nodded affirmatively. One cannot discern whether the witness understood which question he was answering, let alone the ramifications of his affirmation.

The largely leading questions posed by the trial court, combined with the cryptic answers or physical affirmations given by Shane, do not provide a sufficient foundation to legally qualify him to testify. For the trial court to rest its determination of competency on so barren a record constitutes an abuse of discretion. In view of the fact that Shane's testimony was the only direct evidence offered to prove that the defendant caused his injuries, the error was not harmless beyond a reasonable doubt. Accordingly, I would remand for a new trial.

Because I would remand this case for a new trial, I need not address the defendant's second contention that a new trial based on newly discovered evidence is warranted. I note in passing, however, that Shane's alleged recantation serves to evidence the tension and stress that Shane was subjected to, thus further supporting my position that the trial court should have questioned him in a more thorough fashion.

JOHNSON, J., dissenting: I concur with the dissenting opinion of the Chief Justice; however, I write separately to emphasize the need

for extraordinary caution in cases, such as this, where a child of parents involved in a "bitter custody and marital dispute" alleges abuse, either of a physical or sexual nature. Common sense tells us that these unfortunate children are all too often placed in a veritable vise between the two warring parents. The intense pressure upon the child to testify in a fashion that will aid one of the parents in their dispute is all too obvious.

The law is clear: the child witness, in order to be found to be competent, must meet two criteria. He or she (1) must understand the difference between truth and falsehood and (2) must appreciate the obligation to tell the truth. *See generally* Myers, *The Testimonial Competence of Children,* 25 J. Fam. L. 287, 327–35 (1986–87).

In this case, a thorough review of the record reveals not a scintilla of evidence that the alleged child-victim, Shane Kelley, understood the difference between truth and falsehood. He was never asked a single question from which a reviewing court could conclude that he met the first test, that he understood the difference between truth and falsehood. Thus, we have a record that is completely devoid of this critical evidence. The majority is left to uphold the conviction only upon the trial judge's finding, within his "sound discretion," that the child is competent to testify. The record of the child's competency in this case is virtually unreviewable by this or any appellate court.

The trial court's conclusion that the alleged child victim was competent to testify, when he states that the child had the ability to observe and narrate "as well as any four-year-old," offers little comfort to us. What if the trial court had found that the child had the ability to observe and narrate as well as any two-year-old? Would we allow a defendant to be deprived of his liberty simply because the child has the "average" ability of a child of the age of the alleged victim, absent a showing that the "average" child of that age knows the difference between truth and falsehood?

The record indicates that the second test for a child's competency, that he appreciates the obligation to tell the truth, was also not met in this case. In the Chief Justice's dissent, the relevant colloquy is set out at length. Had the trial judge received an answer to the first question, "Does something happen if you don't tell the truth?," then an appellate court might have the necessary record to decide if the child had the requisite appreciation of the obligation to tell the truth. However, no answer to that question alone was given. We can only speculate as to what the child would have answered. The record as to that question is thus unreviewable. Further, the trial judge received

no direct answer to the second question, "Does anything bad happen or somebody do something to you if you don't tell the truth?" Had an answer been given, an appellate court could possibly discern whether the child appreciated the obligation to tell the truth. Again, this blurred colloquy offers no reviewable record for an appellate court on the crucial issue of the child's competency.

The third question only served to further muddy the waters and make the child's answer to the combined three questions incomprehensible and completely unreviewable. The question was, "Will your mommy be upset and your daddy be upset?" Upset about what? The child's "daddy," Jerry Kelley, obviously wanted the child to say that the defendant, Kelly Mills, had abused him, and would be "upset" if the child said otherwise. On the other hand, his "mommy," Barbara Mills, would be "upset" if the child named her then-husband, the defendant, Kelly Mills, as the one who had abused him. It is of little surprise that the child could not articulate an answer to this question, but only nodded his head. Quite obviously, given the circumstances, one of his parents would be "upset," no matter what his testimony would be during the trial. That the child later allegedly recanted his testimony, when, as the majority points out, both natural parents were urging a totally divergent view of the "truth" upon the child, is not surprising. When a very young child is brought into the middle of a "bitter custody dispute," the child's personal bewilderment can be easily understood. The child's testimony, in the divorce proceeding itself, should be viewed with *extreme* caution. The child's testimony in a criminal proceeding at the time of bitter marital proceedings must be subject to *extraordinary* caution. The child's testimony should be allowed only after the most careful and precise questioning to determine if the child is, at that moment in time, free of parental or other influence, and that the child fully and completely understands (1) the difference between truth and falsehood and (2) the obligation to tell the truth.

The record in this case deprives the defendant of meaningful appellate review of his conviction. I would remand this case for a new trial and, therefore, respectfully dissent.