Hillsborough-southern judicial district
No. 93-147

THE STATE OF NEW HAMPSHIRE

v.

DONALD BRIERE

July 6, 1994

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*Judith M. Kasper*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.   The defendant, Donald Briere, appeals his convictions after a jury trial in Superior Court (*Dalianis*, J.) of seven

counts of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1993), and three counts of felonious sexual assault, RSA 632-A:3 (1986). The convictions stemmed from charges that on one evening the defendant sexually assaulted his three children, Michael, Krystal, and Stephanie, ages eight, six, and four, respectively. On appeal the defendant argues that the youngest child, Stephanie, who was five years old at the time of trial, was incompetent to testify, and that the evidence was insufficient to support the convictions. We affirm.

The defendant and Judy Briere were married in 1982. After years of turmoil that included drug use, physical abuse, and separations, the couple separated permanently in May 1990. At about the same time Ms. Briere began to observe sexual behavior in Michael and Stephanie, who both referred to the activity as "humping." In May 1991, Stephanie told her mother, "Daddy likes to hump us." Ms. Briere reported this to the police, who then interviewed Stephanie. During this interview Stephanie named her brother as the person engaging in sexual activity with her and denied any involvement by her father. Michael admitted his conduct to the police.

In late July or early August 1991, Stephanie reported to her therapist that the defendant had abused her. The defendant had been living in a two-room basement area of a house during June and July, and his children visited him there overnight on at least one occasion during that time. In November 1991, Michael and the defendant's other daughter, Krystal, revealed to their mother that the defendant had abused them, making allegations similar to those of Stephanie.

As a result of their disclosures, the children were examined by Dr. Steven Kairys, who found in Michael and Stephanie abnormal physical conditions that could have resulted from sexual trauma but were nonspecific to a sexual origin. In Krystal, Dr. Kairys found abnormalities that were highly suspect for sexual abuse. In addition, Michael became increasingly violent and destructive and began to perform badly at school. Stephanie was eventually hospitalized for self-destructive behavior and threats of suicide. The hospital determined that she was suicidal.

At the defendant's trial on charges arising from the children's allegations, each child testified. According to Michael, the assaults occurred one night at the defendant's house, when they were all together in his bed. The defendant used a cotton swab to penetrate the anus of each child and to touch Michael's penis. He also poured juice on each child's genital area and wiped it off with his hand. The defendant also anally penetrated each child and forced Michael to do the same to him. Michael admitted that he had engaged in sexual

activity numerous times with Stephanie and had forced himself sexually on Krystal. He stated that the defendant often hit him and yelled at him before moving out, and that when he had previously denied that the defendant had abused him, he did so because he was afraid of the defendant.

Krystal testified that the assaults happened on the floor at the defendant's house. The defendant used a cotton swab to penetrate all three children anally, to penetrate her and Stephanie vaginally, and to touch Michael's penis. He poured juice on her and Michael's genital areas and wiped it off with a napkin. The defendant also penetrated Krystal anally with his penis. Krystal also stated that she did not see certain incidents happen with her brother and sister, but that she left the room at some point.

According to Stephanie's testimony, the defendant vaginally and anally penetrated her with a cotton swab and vaginally penetrated her with his penis. The assaults occurred on the floor. She also testified that the defendant put juice in her vaginal area and "stirred it with a spoon." Although she first testified that the assaults occurred in the family room where Krystal was riding the exercise bicycle while Michael was sitting on the defendant's bed in the bedroom, she later stated that Michael and Krystal were together in the family room playing pool "when he did it." Stephanie also testified that she saw the defendant digitally penetrate Michael and Krystal, and when asked whether this occurred on the same occasion, she stated that she thought "it was at a hospital." She testified that Michael "humped" her only once.

The parties stipulated that Dr. Eva Rydrewski at Lakeshore Hospital would testify that Stephanie once asked to go home with her mother and, upon being told she could not, hit her mother and said, "My dad did not hump me, I lied." When asked why she had lied, Stephanie said, "O.K., I did not lie, but now I want to go home."

The defendant testified and denied sexually assaulting his children. The Hudson police officer who interviewed the defendant on two occasions testified that at the second interview the defendant stated that he now believed his children had been sexually molested by someone. There was also testimony concerning a molestation of Krystal and Stephanie several years earlier by a female babysitter, who had taken off her shirt and lain on top of them.

Of the fifteen indictments on which the defendant was tried, he was found not guilty of three charges of aggravated felonious sexual assault against Stephanie. In addition, one charge of aggravated felonious sexual assault and one of felonious sexual assault were dis-

missed by the court. The defendant was convicted of the remaining ten charges.

The defendant first contends that the trial court erred in finding five-year-old Stephanie competent to testify. After a pretrial competency hearing, the defendant did not move for a finding of incompetency but left the decision to the court's discretion. After Stephanie testified at trial, however, he moved that the court reconsider its competency determination and strike her testimony. The court denied the motion, stating that Stephanie "still passes the threshold test of competence for a child of her age." The court went on to find that Stephanie continued to understand the difference between the truth and a lie, and that she demonstrated an ability to observe, remember, and narrate events. The court concluded that it was "for the jury to decide" whether Stephanie was believable.

■ Witnesses are presumed competent to testify, pursuant to New Hampshire Rule of Evidence 601(a). Although this presumption may be overcome by findings that the witness "lacks sufficient capacity to observe, remember and narrate as well as understand the duty to tell the truth," N.H. R. Ev. 601(b); see State v. Mills, 136 N.H. 46, 49, 611 A.2d 1104, 1105 (1992), absent an abuse of the trial court's discretion, we will not overturn its competency determination where the record contains evidence to support it. Mills, 136 N.H. at 49–50, 611 A.2d at 1105. Because so much depends on the trial court's first-hand observations of the witness, its conclusion that the witness is competent is entitled to great deference. Id. at 50, 611 A.2d at 1106.

The defendant argues that Stephanie's trial testimony exhibits her inability to remember and narrate coherently, to understand the difference between truth and fantasy, and to appreciate the importance of truthfulness, thereby demonstrating her lack of competency. We disagree.

Stephanie's testimony contains descriptions of the various sexual acts alleged to have occurred, including the use of dolls and drawing circles on pictures to demonstrate the acts and body parts. When she was not sure of the answer to certain questions, she was able to say so and to say that she could not remember.

■ The defendant points to specific inconsistencies and memory lapses in Stephanie's testimony as evidence of her incompetency as a witness. "Inconsistencies in testimony and a failure to remember aspects of the subject of the testimony, however, do not disqualify a witness. They present questions of credibility for resolution by the trier of fact." People v. Mincey, 6 Cal. Rptr. 2d 822, 844, 827 P.2d 388,

410 (Cal.), *cert. denied,* 113 S. Ct. 637 (1992) (citation omitted); *cf. State v. Scarlett,* 121 N.H. 37, 40, 426 A.2d 25, 27 (1981) (that witnesses "may have been uncertain about some things goes to the weight of their testimony and does not require the court to exclude it").

Moreover, we do not agree with the defendant's characterization of Stephanie's testimony as incoherent. The trial court found, and we agree, that her ability to narrate was commensurate to that of a five-year-old child. *See State v. Thrasher,* 233 Kan. 1016, 1019, 666 P.2d 722, 724 (1983). Likewise unpersuasive is the defendant's attempt to paint the witness as lacking the ability to comprehend the importance of truthfulness and the distinction between truth and fantasy. Stephanie's pretrial *voir dire* testimony, in response to specific questions on the subject of truthfulness, amply demonstrated her competency in that regard, and nothing in her trial testimony undermined the trial court's preliminary ruling to that effect. The defendant would have us decide the question with reference to Dr. Rydrewski's stipulated testimony concerning Stephanie's out-of-court recantation, in which she first claimed to have lied about her father and then immediately said she did not. In our view, this, along with her gaps in memory and inconsistencies, is simply an appropriate subject for argument to the jury, whose responsibility it was to determine witness credibility. *See Barrera v. United States,* 599 A.2d 1119, 1126 (D.C. App. 1991) (in arguing that memory gaps and inconsistencies elicited on cross-examination rendered witness incompetent, defense "confuses the court's legal determination of competency with the jury's factual determination of credibility").

■ The jurors heard Stephanie testify and were in a position to observe her demeanor. In its final charge, the trial court gave them special instructions on how to evaluate the testimony of a child. We agree with those courts that have recognized a "tendency, . . . except in quite clear cases of incompetency, . . . to let the witness testify and have the triers make any proper discount for the quality of her 'understanding,'" *Commonwealth v. Gamache,* 626 N.E.2d 616, 619 (Mass. App. Ct.), *review denied,* 417 Mass. 1103 (1994) (quotation omitted), and in this case conclude that the trial court did not abuse its discretion in finding that the child met the threshold requirements of competency.

■ The defendant next argues that the evidence was insufficient to support the convictions. Viewing all the evidence and reasonable inferences therefrom in the light most favorable to the State, we will

not set aside the verdicts unless no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See State v. Baker*, 135 N.H. 447, 449, 606 A.2d 309, 310 (1992).

■ The essence of the defendant's sufficiency claim is that the children's testimony was so internally and mutually inconsistent as to be incredible as a matter of law. A review of the record reveals instances of apparent divergence among the victims in their accounts, as well as cross-examination testimony that elicited prior inconsistent statements and prior failures to report the abuse. "Inconsistencies may damage the credibility of a witness, but it is the province of the jury to evaluate the credibility of witnesses and give their testimony appropriate weight." *State v. Simpson*, 133 N.H. 704, 707, 582 A.2d 619, 621 (1990). Notably, despite some inconsistencies among the children, the defendant does not point to any specific charge resulting in a guilty verdict for which evidentiary support was completely lacking. That three young children may disagree in their respective recollections of specific assaults they experienced and observed does not compel a finding that the evidence was legally insufficient. *Cf. State v. LaRose*, 127 N.H. 146, 153, 497 A.2d 1224, 1230 (1985). Nor do the defendant's arguments that the allegations arose in the context of a bitter marital separation and that the children may have gained their sexual knowledge elsewhere compel such a finding. These were arguments for the jury to consider in performing its duty of deciding the credibility of the witnesses. In matters of credibility, we defer to the jury unless it acted unreasonably. *See Simpson*, 133 N.H. at 707, 582 A.2d at 621. We cannot say that it did so here. We therefore hold that the evidence was sufficient to support the defendant's convictions.

*Affirmed.*

All concurred.