Strafford
Nos. 95-451
    95-453

## THE STATE OF NEW HAMPSHIRE

v.

## SEAN CROFT

June 19, 1997

*Jeffrey R. Howard*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. Following a jury trial in Superior Court (*Fauver*, J.), the defendant, Sean Croft, was convicted of first degree assault, *see* RSA 631:1 (1996), and aggravated felonious sexual assault, *see* RSA 632-A:2 (1996). The defendant's convictions also constituted a violation of a previous term of probation. In this consolidated appeal from both the convictions and the probation violation, the defendant argues that the superior court at his criminal trial erred: (1) in

ruling, based on offers of proof, that an assistant county attorney could testify concerning a prosecution witness's character for truthfulness; and (2) in admitting a letter, written by the defendant, whose probative value was substantially outweighed by its prejudicial effect. We affirm.

The jury could have found the following facts. On September 8, 1992, the defendant encountered the victim at a restaurant in Rochester and offered her pills for a headache. Previously, the defendant had stated to his girlfriend that he wanted to kill the victim as a result of her actions toward one of the defendant's friends. At the restaurant, the victim ingested the pills, which the defendant failed to disclose were prescription sedatives. After the victim became unconscious, the defendant took her to his apartment where he brutally beat and kicked her, stabbed her in the leg, forced additional pills down her throat, and raped her.

## I

The defendant's first argument on appeal concerns a "ruling" by the trial court concerning the admissibility of proposed testimony from an assistant county attorney. At trial, Shane Grant testified that the defendant told him that the defendant had beaten and raped the victim. According to Grant, who had been incarcerated in the county jail with the defendant following the defendant's arrest, the defendant made these statements in the presence of another inmate, Brian Ellis. At the conclusion of the State's case, the defendant's attorney informed the trial court of the defense's intention to rest, rather than call Ellis. According to the defendant's trial attorney, the decision to rest resulted from a previous "indication" by the trial court, during an unrecorded conference, regarding the admissibility of the prosecution's evidentiary response to Ellis' testimony.

On the record, the defendant's attorney asserted that Ellis would have testified that the statements described by Grant were never made by the defendant in Ellis' presence; that the prosecuting attorney would have countered Ellis' testimony by calling a colleague, assistant county attorney Harry Starbranch, to testify as to his opinion of Grant's truthful character; and that the prosecution's use of an assistant county attorney to testify in such a manner would have been inappropriate. The trial court responded:

> Let me just say we are not even at that point yet. I haven't heard any of this testimony, and I haven't even — obviously, once I hear it, Brian Ellis testifies, and Attorney Starbranch then decides to testify in rebuttal or the County

> Attorney calls him in rebuttal, we'll deal with those issues
> at the time. I can't operate in a vacuum on this . . . .

The trial court further cautioned the defendant's attorney against suggesting that the court was somehow responsible for the defense's decision not to call Ellis.

At that point, the prosecuting attorney interjected, explaining the State's understanding that Ellis would impeach the credibility of Grant and essentially confirming the state of affairs described by the defendant's attorney. According to the prosecuting attorney, the assistant county attorney would testify, based on his "several contacts and some dealings" with Grant, as to Grant's character for truthfulness. The trial court again stated that it would not rule on the issue until it actually heard Ellis' testimony and determined its significance with respect to the proposed rehabilitation testimony of the assistant county attorney. *See* N.H. R. EV. 608(a).

Not satisfied with the trial court's position, the defendant's attorney pressed the court for a ruling on the appropriateness of the rehabilitation testimony under Rule 608(a) and, more particularly, on the propriety of such testimony from an *assistant county attorney* who had previously prosecuted the defendant. After further discussion, the trial court stated that the proposed testimony from the assistant county attorney would be permissible "if the proper foundation is laid consistent with Rule 608." In addition, the trial court apparently concluded that testimony from Ellis directly contradicting Grant's testimony would constitute the type of attack on Grant's truthfulness that would authorize rehabilitation evidence concerning Grant's truthful character. The defendant's attorney then reiterated that Ellis would not be called as a defense witness.

On appeal, the defendant alleges three errors in the trial court's "ruling" concerning the admissibility of the proposed testimony from the assistant county attorney. First, the defendant argues that the foundation for the rehabilitation testimony was insufficient under *State v. Vachon*, 139 N.H. 540, 543, 659 A.2d 426, 429 (1995), because the assistant county attorney merely had "dealings" and "contacts" with Grant. Second, the defendant contends that Ellis' testimony would have directly contradicted Grant's testimony and, therefore, would not have constituted the type of indirect attack on Grant's general truthfulness that would have permitted evidence of Grant's truthful character. *Cf. State v. Ross*, 141 N.H. 397, 400-02, 685 A.2d 1234, 1236-37 (1996). Third, the defendant argues that the trial court improperly condoned the prosecution's "ploy of having a

fellow prosecutor testify about the credibility of the State's own witness."

■ The State counters that none of these issues is preserved for our review because the trial court never ruled in the context of actual testimony. We agree. Although the record suggests that the trial court ultimately provided a conditional opinion on the admissibility of the assistant county attorney's testimony, we endorse its initial refusal to "operate in a vacuum." Because neither Ellis nor the assistant county attorney testified, "we find the claim of prejudicial error too speculative for adjudication." *State v. Bruneau*, 131 N.H. 104, 115, 552 A.2d 585, 592 (1988); *see also Luce v. United States*, 469 U.S. 38, 41-42 (1984). Indeed, we have no way of knowing whether the defendant would actually have called Ellis to testify absent the trial court's "ruling," how Ellis would have testified, whether Ellis' testimony and the cross-examination of Ellis would have triggered rehabilitation evidence under Rule 608(a)(2), whether the prosecution would have attempted to respond with testimony from the assistant county attorney, whether the prosecution would have established the foundational predicate for such testimony under *Vachon*, how the trial court ultimately would have ruled if the defendant interposed a specific and timely objection, and how the assistant county attorney would have testified. *See United States v. Griffin*, 818 F.2d 97, 104 & n.5 (1st Cir.), *cert. denied*, 484 U.S. 844 (1987); *see also Bruneau*, 131 N.H. at 115, 552 A.2d at 592.

Aware of the general rule against appellate review of hypothetical evidentiary errors, the defendant would have us distinguish this case on the grounds that the parties' undisputed offers of proof were sufficiently specific to inform this court of the critical *facts* relating to the evidentiary issue and that the trial court's "ruling" was erroneous as a matter of *law*. Neither ground advanced by the defendant provides a persuasive reason for departing from the general rule. The specificity of the offers of proof is irrelevant because "trial testimony [can], for any number of reasons, differ from the proffer[s]." *Luce*, 469 U.S. at 41 n.5; *see also Griffin*, 818 F.2d at 104. Characterizing the trial court's "ruling" as an error of law in no way alters the principle that the admissibility of responsive evidence can only be determined after reviewing the *actual* testimony to which it would respond. *See United States v. Nivica*, 887 F.2d 1110, 1117 (1st Cir. 1989), *cert. denied*, 494 U.S. 1005 (1990).

## II

The defendant next argues, based on New Hampshire Rule of Evidence 403, that the trial court erred in admitting a letter because its probative value was substantially outweighed by its prejudicial effect. The letter was written by the defendant to an inmate at the county jail after the defendant's arrest and subsequent transfer from the county jail to the State Prison. In the letter, the defendant refers to his misconduct at the county jail, offers profanity-laced promises of revenge against employees at the county jail, describes himself as a member of "the new generation of prisoners," identifies the State Prison as his "home for 6 to 15 years," and portrays life at the prison as relatively tolerable.

█ The State argues that the defendant's objections at trial failed to preserve the Rule 403 argument that he currently advances. We agree. It is well settled that "a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. Russo*, 140 N.H. 751, 753, 674 A.2d 156, 158 (1996) (quotation omitted). At trial, the defendant specifically objected to the letter on relevance grounds, mentioned "bad acts" and "character" concerns, and referred to New Hampshire Rule of Evidence 404(b). An objection on "bad acts" or Rule 404(b) grounds, however, has *three* potential bases. *See State v. Bassett*, 139 N.H. 493, 496, 659 A.2d 891, 894 (1995) (discussing three-pronged analysis for admissibility under Rule 404(b)). Relevance, the ground specifically raised by the defendant at trial, is only *one* of these bases; the Rule 403 balancing of probative value and prejudicial effect, a ground never identified by the defendant, is a *separate* basis. *See State v. McGlew*, 139 N.H. 505, 507, 658 A.2d 1191, 1193 (1995).

We conclude that the defendant's specific objection on relevance grounds precludes his current attempt to broaden the scope of his challenge to the letter's admissibility. *Cf. State v. Mills*, 136 N.H. 46, 49, 611 A.2d 1104, 1105 (1992) (specific objection concerning competency of child witness rendered other related arguments unpreserved). The fact that the trial court actually addressed the letter's probative value and prejudicial effect is not alone dispositive, given the defendant's initial failure to raise an objection based on prejudice, *see State v. Winn*, 141 N.H. 812, 813, 694 A.2d 537, 538 (1997), and his subsequent failure to object to the trial court's balancing determination, *cf. Mills*, 136 N.H. at 49, 611 A.2d at 1105.

Finally, we assume without deciding that the defendant's briefing of his Rule 403 argument adequately preserves a challenge to the letter's relevance (the probative nature of the evidence forming part

of the Rule 403 equation). Our inquiry ends, however, with the defendant's recognition that the letter's reference to State Prison as "home for 6 to 15 years" was marginally relevant to the assault charge.

*Affirmed.*

HORTON, J., and BRODERICK, J., concurred specially; the others concurred.

HORTON, J., concurring specially: I join in part I of the majority's opinion for the cogent reasons stated therein. I concur in the result reached in part II of the majority's opinion, but disagree with its conclusion concerning preservation of the defendant's argument under New Hampshire Rule of Evidence 403. Accordingly, I write separately to state my reasons for believing that the defendant's argument concerning the prejudicial effect of the letter was preserved and for concluding that the trial court did not err in admitting the letter.

As the majority correctly notes, the defendant's trial attorney specifically objected to the letter on relevance grounds. Additional objections vaguely raised "bad acts" and "character" concerns and referred to New Hampshire Rule of Evidence 404(b). In holding that the defendant's objections failed to preserve an argument based on the prejudicial effect of the letter, the majority apparently construes the defendant's specific objections on relevance grounds as circumscribing the scope of his general "bad acts" or Rule 404(b) objections. Stated otherwise, the majority views the defendant's various objections as raising "bad acts" objections *based solely on* relevance grounds.

In my opinion, the defendant objected on *both* relevance *and* "bad acts" grounds. I would therefore hold that his objections adequately preserved the defendant's Rule 403 argument because concerns about prejudicial effect are implicit in "bad acts" or Rule 404(b) objections. *See State v. Carter,* 140 N.H. 1, 4-5, 662 A.2d 289, 291 (1995); *cf. State v. Bouchard,* 138 N.H. 581, 585, 643 A.2d 963, 966 (1994); *State v. Judkins,* 128 N.H. 223, 224-25, 512 A.2d 427, 428 (1986). Moreover, the trial court apparently understood the defendant's objections as presenting the Rule 403 issue because the court specifically found that the letter's probative value substantially outweighed its prejudicial effect. *See State v. McMinn,* 141 N.H. 636, 642, 690 A.2d 1017, 1021 (1997). The rationale for the preservation doctrine — affording the trial court the initial opportunity to address an issue — was therefore served in this case. *See State v.*

*Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991). Finally, I disagree with the majority's assertion that the defendant should have objected to the trial court's ruling concerning the letter's probative value and prejudicial effect. "Taking of exceptions is no longer necessary in matters of evidence." N.H. R. EV. 103(e).

Turning to the merits of the defendant's argument under Rule 403, I would conclude that the trial court did not abuse its discretion in admitting the letter. *See State v. Philbrook*, 138 N.H. 601, 603, 644 A.2d 66, 67 (1994). The letter's relevance flowed directly from the defendant's implicit recognition of his culpability through the reference to State Prison as his "home for 6 to 15 years." The letter's relevance flowed less directly from its tendency to support the prosecution's explanation for the defendant's reason for denying the rape charge in his written statement to the police.

On this last point, the prosecution argued that the letter provided the key for understanding the defendant's numerous inculpatory statements concerning the assault charge but his discrepant statements regarding his culpability on the rape charge. For example, the defendant on separate occasions admitted facts central to the assault charge to his girlfriend, to Shane Grant, to an acquaintance, and to the police in a written statement. In contrast, the defendant admitted the rape to Shane Grant and to an acquaintance, but he emphatically denied that charge in his written statement to the police. According to the prosecution, the letter not only demonstrated that the defendant knew he was going to State Prison on the assault charge, but it also showed that he wanted to be respected at the prison as a "tough guy," not despised as a rapist. Shane Grant had testified that an inmate's underlying criminal conviction often determines his reputation at the State Prison: individuals convicted of first degree assault ("tough guys") have a favorable reputation and receive no harassment from other prisoners, whereas convicted rapists have a "very low, low reputation." Although this theory of relevance may not be compelling, I cannot say that the trial court abused its discretion in finding the letter relevant and probative.

I would also hold that the trial court could properly have concluded that the prejudicial effect of the letter was minimal. The letter essentially contained references to the defendant's petty misbehavior at the county jail and his rage toward jail employees for their alleged refusal to return his shaving cream. Thus, the substance of the letter, including its profanity, was not inflammatory when viewed in the context of the serious nature of the charged offenses. Accordingly, the trial court did not abuse its discretion in determining that the letter's prejudicial effect did not substantially

outweigh its probative value. *See State v. Stayman*, 138 N.H. 397, 403, 640 A.2d 771, 775 (1994).

BRODERICK, J., concurring specially: I join in part I of the majority opinion and concur in the result reached in part II. I write separately because I agree with Justice Horton that the defendant properly preserved his objection concerning the prejudicial effect of the letter. As the trial court recognized, the defendant's argument that the letter would be unduly prejudicial was implicit in his objection based upon New Hampshire Rule of Evidence 404(b); "[t]o raise an objection on the ground of prejudice does not necessarily require counsel to utter the word 'prejudice.'" *State v. Judkins*, 128 N.H. 223, 225, 512 A.2d 427, 428 (1986). Though I believe the prejudicial effect of the letter was not insubstantial, the error in admitting this evidence was harmless.

The prejudicial effect of the letter substantially outweighed its probative value. It is speculative to infer a culpable state of mind from the defendant's reference to State Prison as his "home for 6 to 15 years," as he made no mention in the letter of the charged offenses or the surrounding circumstances. Nor did the letter actually support the prosecution's explanation for the defendant's denial of the rape charge; indeed, to find such support in the letter would require one to read so closely between its lines as to render any search for deeper meaning pointless. To be sure, the letter quite explicitly reveals that its author is profane, has destructive tendencies, and cares little for authority — in short, that he is hardly a model citizen. Any marginal probative value the letter may have had was thus substantially outweighed by its "undue tendency to induce a decision against the defendant on some improper basis." *State v. Cochran*, 132 N.H. 670, 672, 569 A.2d 756, 757 (1990). On balance, admission of the letter was error.

This error was nonetheless harmless. Our inquiry in a harmless error analysis is not "whether the evidence, apart from that erroneously admitted, would support a finding of guilt, but whether it can be said beyond a reasonable doubt that the inadmissible evidence did not affect the verdict." *State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976). "The evaluation of whether this standard has been achieved involves consideration of the alternative evidence presented at trial and of the character of the inadmissible evidence itself." *State v. Vandebogart*, 139 N.H. 145, 157-58, 652 A.2d 671, 679 (1994) (quotation and citations omitted).

In this instance, the State presented compelling evidence of the defendant's guilt. The defendant, on separate occasions, admitted

facts central to the assault charge to the police, to his girlfriend, to Shane Grant, and to an acquaintance; the defendant also admitted the rape to Shane Grant and to an acquaintance. The defendant had earlier stated that he wanted to kill the victim; the victim told the medical staff treating her injuries of "penetration"; tests revealed the presence of unidentified seminal material on the victim; and the defendant was seen with the victim both shortly before and immediately after the incident. As against this evidence, the force of the erroneously admitted letter, including its profanity, was comparatively minimal and, therefore, inconsequential. *See State v. Lemieux*, 136 N.H. 329, 331-32, 615 A.2d 635, 636 (1992).